IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MICHAEL R. CHUBB,

            Plaintiff,

    v.                                    CASE NO. 17-3220-SAC

TIM KECK, et al.,

            Defendants.

**MEMORANDUM AND ORDER TO SHOW CAUSE**

Plaintiff Michael R. Chubb, a person civilly committed under Kansas law to the custody of the Secretary of the Department of Social and Rehabilitative Services in the Sexual Predator Treatment Program (SPTP) and currently detained at Larned State Hospital (LSH), Larned, Kansas, brings this 42 U.S.C. § 1983 civil rights complaint. Plaintiff proceeds *pro se*. For the reasons discussed below, Plaintiff is ordered to show cause why his complaint should not be dismissed. Also before the Court are three motions filed by Plaintiff.

**I. Nature of the Matter before the Court**

Plaintiff's complaint (ECF Doc. 1) alleges Defendants conspired to conduct unlawful searches and seizures of his personal property and retaliated against him for exercising his right to file grievances. Plaintiff names as defendants Tim Keck, Secretary of the Kansas Department of Aging and Disability Services; Bill Rein, Superintendent of LSH; Michael Dixon, Director of the Sexual Predator Treatment Program (SPTP); Haleigh Bennett, Program Manager; Tony Schwabauer, Chief of Security, LSH; and Gerry Dirks, Special Investigator, LSH.

1

Plaintiff complains of several incidents:

1) May 1, 2017 – Defendant Schwabauer and his deputies searched Plaintiff's room without consent or a search warrant. They seized USB cables and power cords owned by Plaintiff and damaged a set of craft drawers. Plaintiff has not yet been compensated for the damage.

2) June 20, 2017 – Officer Heather Keller seized all of Plaintiff's property without a warrant or consent. She told Plaintiff she was instructed to do this by Defendant Bennett so Plaintiff's property could be searched for contraband. Some of the property was damaged as a result of being disassembled. Plaintiff has not yet been compensated for the damage.

3) September 20 or 21, 2017 – LSH Security Officers searched unspecified mail from an authorized vendor without consent or a warrant. Plaintiff was issued a rights restriction of his mail. Plaintiff was deprived of the property from June 20 to July 23, 2017.

4) November 28, 2017 – LSH Security Officer Kirts opened and searched a package containing an audio equalizer Plaintiff had ordered from an authorized vendor. Plaintiff consented to this after being told the equalizer would not be allowed into the building if he did not consent. The opening was performed outside Plaintiff's presence. It turned out it was not what Plaintiff had ordered, but he claims he was unable return the item because it had been opened.

5) At some point, Defendants seized all of Plaintiff's approved movies and video games and declared them contraband by changing facility policy.

Plaintiff alleges the defendants engaged in a conspiracy to violate his constitutional rights. He claims Defendant Bennett told another resident on June 29, 2017, that she wanted to search Plaintiff's property and needed an excuse. He further alleges Defendant Bennett directed the search on June 20 and conspired with Defendant Schwabauer and other defendants to violate his

rights in retaliation for Plaintiff filing grievances. Plaintiff grieved his complaints to Defendants Keck, Dixon, and Rein, yet alleges they failed to intervene to protect Plaintiff from further abuses.

Plaintiff seeks a permanent injunction preventing Defendants from conducting warrantless searches and seizures in the future, an order enjoining Defendants and all other persons from taking retaliatory action against him for filing this lawsuit, an order directing the return of Plaintiff's unlawfully seized property, punitive damages of $10,000 from each defendant, compensatory damages of $10,000 from each defendant, and compensation for costs, fees and expenses.

## II. Motion for Leave to Proceed *In Forma Pauperis* (ECF Doc. 2)

Ordinarily, a plaintiff must pay a filing fee of $350.00 to bring a civil action in federal court. 28 U.S.C. § 1914(a). An indigent plaintiff may commence a federal court action, without paying required costs and fees, upon submission of an affidavit asserting inability "to pay such fees or give security therefor" and stating "the nature of the action, defense or appeal and affiant's belief that the person is entitled to redress." 28 U.S.C. § 1915(a)(1). Section 1915 is meant to ensure indigent litigants meaningful access to federal courts. *Nietzke v. Williams,* 490 U.S. 319, 324 (1989).

Having considered the statements made by Plaintiff in his motion for leave to proceed *in forma pauperis* and affidavit, the Court is satisfied at this juncture that Plaintiff's allegation of poverty is true, and that Plaintiff is financially unable to pay any portion of the filing fee. *See Lee v. McDonald's Corp.,* 231 F.3d 456, 458–59 (8th Cir. 2000) (stating a court must determine whether the "allegation of poverty is untrue" when it assesses the affidavit supporting an application to proceed in forma pauperis); *see also Potnick v. Eastern State Hosp.,* 701 F.2d 243, 244 (2nd Cir. 1983). As a result, Plaintiff is granted leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.

**III. Statutory Screening of Complaints filed by *In Forma Pauperis* Litigants**

Even though Plaintiff is not a prisoner, the Court may screen complaints brought by any litigant, such as Plaintiff, who is proceeding *in forma pauperis*, to determine their sufficiency. *See* 28 U.S.C. § 1915(e)(2); *Burch v. Jordan*, No. 07-3236, 2010 WL 5391569, at *3 (D. Kan. Dec. 22, 2010); *Alexander v. Wichita Housing Authority.*, No. 07-1149-JTM, 2007 WL 2316902, at *2 (D. Kan. Aug. 9, 2007). Upon completion of this screening, the Court must dismiss any claim that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary damages from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B).

To survive this review, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In applying the *Twombly* standard, the Court must assume the truth of all well-pleaded factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *See Leverington v. City of Colo. Springs,* 643 F.3d 719, 723 (10th Cir. 2011).

While a *pro se* plaintiff's complaint must be liberally construed, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), *pro se* status does not relieve the plaintiff of "the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). The Court need not accept "mere conclusions characterizing pleaded facts." *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990). "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks omitted).

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was

committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992). In addressing a claim brought under § 1983, the analysis begins by identifying the specific constitutional right allegedly infringed. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). The validity of the claim then must be judged by reference to the specific constitutional standard which governs that right. *Id.*

## IV. Discussion

### A. Official Capacity Claims

The complaint includes claims for monetary relief against the defendants in their official capacity as state officials. These claims fail for lack of jurisdiction. A suit against a state official in his official capacity is equivalent to a suit against the entity he represents. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). Therefore, claims against state officials in their official capacity seeking monetary relief are barred by the Eleventh Amendment. *Id.* at 169.

To the extent Plaintiff has sued Defendants in their official capacity for prospective injunctive relief, those claims are not implicated by the Eleventh Amendment. *See id.* at 71 n.10. However, the Court finds the official capacity claims for declaratory and injunctive relief also fail because, as discussed below, the complaint does not allege facts showing Defendants violated Plaintiff's constitutional rights.

### B. Personal Participation

An essential element of a civil rights claim against an individual is that person's direct personal participation in the acts or inactions upon which the complaint is based. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *Trujillo v. Williams*, 465 F.3d 1210, 1227 (10th Cir. 2006); *Foote v. Spiegel*, 118 F.3d 1416, 1423–24 (10th Cir. 1997). Conclusory allegations of involvement are not sufficient. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is

5

inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). As a result, a plaintiff is required to name each defendant not only in the caption of the complaint, but again in the body of the complaint and to include in the body a description of the acts taken by each defendant that violated plaintiff's federal constitutional rights.

An official's liability may not be predicated solely upon a theory of respondeat superior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Duffield v. Jackson*, 545 F.3d 1234, 1239 (10th Cir. 2008); *Gagan v. Norton*, 35 F.3d 1473, 1476 FN4 (10th Cir. 1994), *cert. denied*, 513 U.S. 1183 (1995). To be held liable under § 1983, a supervisor must have personally participated in the complained-of constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1528 (10th Cir. 1988). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." *Fogarty v. Gallegos*, 523 F.3d 1147, 1162 (10th Cir. 2008).

The allegation that an official denied a grievance or failed to respond to a grievance is not sufficient to show personal participation. *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (A "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983."); *see Stewart v. Beach*, 701 F.3d 1322, 1328 (10th Cir. 2012).

In this respect, the complaint fails to state a claim against three of the defendants. The only allegations Plaintiff makes about Defendant Keck are that Plaintiff mailed him two letters notifying him of the allegedly unauthorized searches and seizures by LSH security officers. Plaintiff describes no direct personal participation by Defendant Keck, and he is subject to dismissal from this action.

As for Defendant Rein, Plaintiff alleges he is responsible for ensuring LSH security officers follow policies, and he failed to do so. Plaintiff alleges no more than "abstract authority over individuals who [allegedly] actually committed a constitutional violation." *Fogarty*, 523 F.3d at 1162. Defendant Rein is also subject to dismissal.

Last, Defendant Dixon is subject to dismissal. Plaintiff states he notified Defendant Dixon by letter that LSH security officers were conducting unauthorized searches and seizures. As with Defendant Keck, Plaintiff describes no direct personal participation by Defendant Dixon.

**C. No Constitutional Violation**

Plaintiff alleges in general terms that the incidents described in his complaint and summarized above violated his Fourth and Fourteenth Amendment rights. In addition, he claims Defendants engaged in a conspiracy to violate his constitutional rights and retaliated against him.

Plaintiff, as a civil committee under the Kansas Sexually Violent Predators Act (KSVPA), is in a different position than a prisoner or a person who is civilly committed merely for mental health issues. He has been found to be a sexually violent predator (SVP) from whom society needs to be protected. While SVPs "must be afforded more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish", "SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others." *Hydrick v. Hunter*, 500 F.3d 978, 989-90 (9th Cir. 2007) (quotation omitted). As a result, "the rights of SVPs may not necessarily be coextensive with those of all other civilly detained persons." *Id.*

**1. Fourteenth Amendment**

Courts in this district have applied the rule in SVP cases that a restrictive condition may be imposed without being considered punishment and violating the Fourteenth Amendment if "it

7

bear(s) some reasonable relation to the purpose for which persons are committed." *Burch v. Jordan*, No. 07-3236, 2010 WL 5391569, at *14 (D. Kan. Dec. 22, 2010), aff'd sub nom. *Burch v. Don Jordan*, 444 F. App'x 236 (10th Cir. 2011); quoting *Seling v. Young*, 531 U.S. 250, 265 (2001); see also *Merryfield v. Jordan*, No. 07-3289, Doc. 8 (D. Kan. Feb. 26, 2008). Conditions of confinement cannot give rise to a due process violation unless those conditions constitute atypical and significant hardship on a resident in relation to the ordinary incidents of confined life. *Id.*; *Sandin v. Conner*, 515 U.S. 472, 484 (1995). While restrictions may not be arbitrary or purposeless, SVPs like other civil detainees and prisoners, are undoubtedly subject to security measures typically used at correctional facilities. *Seling*, 531 U.S. at 540. A secure facility has a legitimate interest in "maintaining institutional security and preserving internal order and discipline," which "may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees", as well as SVPs. *Bell v. Wolfish*, 441 U.S. 520, 546 (1979). Consequently, "[l]oss of freedom of choice and privacy are inherent incidents of confinement in such a facility." *Bell*, 441 U.S. at 537.

Under the standard of *Seling*, Plaintiff must allege some facts indicating the conditions he challenges are excessive in relation to the purposes served by his commitment under the KSVPA. The two main purposes of the KSVPA, as recognized by the U.S. Supreme Court, are to incapacitate sexually dangerous predators and to provide treatment. *Kansas v. Hendricks*, 521 U.S. 346, 366 (1997). The searches Plaintiff challenges of his room and packages he received in the mail plainly involve typical security measures, which could further legitimate government goals. Plaintiff alleges no facts suggesting to the Court that the searches he complains of were excessive in relation to the purposes of his confinement. Nor has Plaintiff alleged sufficient facts

8

to show that the searches were atypical or created a significant hardship in relation to the ordinary incidents of life in the SPTP such that due process was violated.

Plaintiff also complains the defendants violated Kansas regulations and policies of LSH. Denying an individual certain process, however mandatory under state law, does not itself deny liberty. *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994). The regulatory provisions upon which Plaintiff relies in this action are neither due nor required under the United States Constitution. *See Lloyd v. Suttle,* 859 F. Supp. 1408, 1410 (D. Kan. 1994). Thus, to the extent Plaintiff complains that state or facility administrative requirements were not followed when his room and mail were searched, no constitutional due process claim is implicated. *Id.*

### 2. Fourth Amendment

Plaintiff asserts the searches of his room and mail violated the Fourth Amendment. The Fourth Amendment protects against unreasonable searches and seizures. *United States v. Johnson*, 584 F.3d 995, 999 (10th Cir. 2009). But the Fourth Amendment is not implicated when the person challenging the search had no reasonable or legitimate expectation of privacy in the place that was searched. *Reeves v. Churchich,* 484 F.3d 1244, 1254 (10th Cir. 2007). To establish a legitimate expectation of privacy, a person invoking the Fourth Amendment must demonstrate a subjective expectation of privacy in the area searched and that the expectation was objectively reasonable. *Johnson*, 584 F.3d at 999. While it is axiomatic that people have a reasonable expectation of privacy in their own homes (*see United States v. Maestras*, 639 F.3d 1032, 1035 (10th Cir. 2011)), courts have not found that residents in sexual predator treatment programs generally have a reasonable expectation of privacy in their rooms. *See State v. Case*, 317 F.3d 149 (Table), 2014 WL 349605, *8 (Kan. App. 2014).

Consequently, Plaintiff must establish that he had a subjective expectation of privacy in his room at LSH and his mail. He has not provided sufficient factual allegations to do so. However, even if he had, the second part of the test asks whether his subjective expectation of privacy is one that society is prepared to recognize as reasonable. *United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012). The Court finds that even if Plaintiff established a subjective expectation of privacy in his room and mail, that expectation was not objectively reasonable. Plaintiff's room is in a secure government facility to which he has been involuntarily committed. K.S.A. 59-29a22(b)(18) provides SPTP residents may "possess personal property in a reasonable amount, as long as the property complies with state laws and facility rules and policies. ... In no event shall a person be allowed to possess or store contraband." The same statute states, "A person's mail is subject to physical examination and inspection for contraband." K.S.A. 59-29a22(b)(15). Moreover, "there is nothing in the KSVPA that provides SPTP residents with complete privacy or otherwise states that residents' rooms will not be searched. Any privacy contemplated by the KSVPA would not outweigh the State's interest in maintaining a safe, secure facility." *State v. Orton*, 400 P.3d 677 (Kan. Ct. App. 2017). Plaintiff's Fourth Amendment claims are subject to dismissal.

### 3. Property Claim

Plaintiff complains that some of his property was seized during the searches and was not returned, was kept for a period of over a month before being returned, or was damaged in the search process. The Tenth Circuit has ruled that property interest claims by prisoners are "to be reviewed under *Sandin*'s atypical-and-significant-deprivation analysis. . . [t]he Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or

property] interest.'" *Steffey v. Orman,* 461 F.3d 1218, 1222 (10th Cir. 2006) (quoting *Cosco v. Uphoff,* 195 F.3d 1221, 1224 (10th Cir. 1999)); *Clark v. Wilson,* 625 F.3d 686, 691 (10th Cir. 2010). By extension, the Court finds *Sandin* should apply to property interest claims by SVPs.

Plaintiff has not alleged facts showing that the property deprivations of which he complains were an "atypical and significant hardship" that subjected him to conditions significantly different from those ordinarily experienced by residents in the SPTP.

Furthermore, even if Plaintiff could establish that he had a protectible interest in his missing or damaged property, his claim that these losses were without due process is conclusory and actually contradicted by his own allegations and exhibits. Plaintiff had post-deprivation remedies which he utilized in the form of the grievance and property claim process. Neither the negligent nor the unauthorized, intentional deprivation of property by a state employee gives rise to a due process violation if state law provides an adequate post-deprivation remedy. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional taking of property does not implicate due process clause where an adequate state post-deprivation remedy is available); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (inmate could not present claim against warden under § 1983 for negligent loss of inmate's property where existence of state tort claims process provided due process). It appears from Plaintiff's complaint and exhibits that the process had not been completed at the time he filed this lawsuit. The Court concludes that Plaintiff has failed to state a claim for relief with regard to his property claims.

### 4. Conspiracy

In Count V, Plaintiff alleges that Defendants' actions "constitute[] a conspiracy to violate his civil rights." The Tenth Circuit has found that "a conspiracy to deprive a plaintiff of a constitutional or federally protected right under the color of state law" is actionable. *Snell v.*

11

*Tunnell,* 920 F.2d 673, 701 (10th Cir. 1990). "To properly allege a conspiracy under § 1983, a plaintiff must allege specific facts that plausibly show (1) an agreement and concerted action between the defendants and (2) an actual deprivation of constitutional rights." *Turnbough v. Wantland*, 676 F. App'x 811, 814 (10th Cir. 2017), citing *Shimomura v. Carlson*, 811 F.3d 349, 359 (10th Cir. 2015). "Conclusory allegations of conspiracy w[ill] not suffice." *Shimomura,* 811 F.3d at 359. The plaintiff must show, either by direct or circumstantial evidence, that there was "a single plan, the essential nature and general scope of which [was] known to each person who is to be held responsible for its consequences." *Snell v. Tunnell,* 920 F.2d 673, 702 (10th Cir. 1990)(citations omitted).

Plaintiff has failed to allege specific facts to support his conspiracy claim. He does no more than make the conclusory allegation that the searches of his room and mail were part of an on-going conspiracy between Defendants Bennett, Schwabauer, and possibly Dirks. More importantly, he has failed to show an actual deprivation of his constitutional rights. Plaintiff's conspiracy claim is subject to dismissal.

### 5. Retaliation

"Prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his 'constitutional rights.'" *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990); *Penrod v. Zavaras*, 94 F.3d 1399, 1404 (10th Cir. 1996). However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006)(quotations and citations omitted); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir.

1990)(plaintiffs must allege specific facts showing retaliation because of the exercise of the prisoner's constitutional rights."). To prevail, a prisoner must show that the challenged actions would not have occurred "but for" a retaliatory motive. *Baughman v. Saffle*, 24 Fed.Appx. 845, 848 (10th Cir.2001)(citing *Maschner*, 899 F.2d at 949–50; *Peterson*, 149 F.3d at 1144)); *see also Jones v. Greninger*, 188 F.3d 322, 325 (5th Cir. 1999)("[T]he inmate must allege more than his personal belief that he is the victim of retaliation.").

Plaintiff states Defendant Bennett had his property searched on June 20, 2017, "in retaliation for his complaint against her for abusing her authority and using LSH Security Police Officers to perform unauthorized searches." ECF Doc. 1 at 13. He does not show the June 20 search would not have occurred but for a retaliatory motive. Plaintiff has not met his burden to include specific facts showing retaliation, and this claim is subject to dismissal.

**V. Motion to Appoint Counsel (ECF Doc. 3)**

There is no constitutional right to the appointment of counsel in a civil case. *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. Deland*, 54 F.3d 613, 616 (10th Cir. 1995). The decision whether to appoint counsel in a civil matter lies within the discretion of the district court. *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991). "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel." *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006)(quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)). It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case." *Steffey,* 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir. 1995)). In deciding whether to appoint counsel, the district court should consider "the merits of the prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's

ability to investigate the facts and present his claims." *Rucks*, 57 F.3d at 979; *Hill*, 393 F.3d at 1115.

Considering these factors, the Court concludes that Plaintiff has not asserted a colorable claim at this point. Therefore, the Court denies Plaintiff's motion to appoint counsel (ECF Doc. 3). Plaintiff may renew his motion at a later time, if the action survives screening.

## VI. Emergency Motion for Temporary Restraining Order (ECF Doc. 4)

Plaintiff asks the Court to enjoin Defendants from interfering, removing, restricting, inhibiting, or otherwise denying Plaintiff's right to receive mail and possess property.

A movant seeking a preliminary injunction to remedy an alleged constitutional violation must establish "four factors: (1) a likelihood of success on the merits [of his described claim]; (2) a likelihood that [he] will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in [his] favor; and (4) that the injunction is in the public interest." *White v. Kansas Dep't of Corr.*, 617 F. App'x 901, 904 (10th Cir. 2015) (*quoting RoDa Drilling Co.,* 552 F.3d at 1208). "Because a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal." *Greater Yellowstone Coal v. Flowers*, 321 F.3d 1250, 1256 (10th Cir. 2003).

Plaintiff's motion falls far short of satisfying this heavy burden. Moreover, as explained above, Plaintiff has not shown a substantial likelihood of prevailing on the merits. As a result, Plaintiff's motion is denied without prejudice.

## VII. Response Required

For the reasons stated herein, it appears that Plaintiff's complaint is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim upon which relief may be granted. Plaintiff is therefore required to show good cause why his complaint should not be dismissed.

Plaintiff is warned that his failure to file a timely response may result in the complaint being dismissed for the reasons stated herein without further notice.

**IT IS THEREFORE ORDERED** that Plaintiff is granted to and including **October 29, 2018**, in which to show good cause, in writing, why his complaint should not be dismissed for the reasons stated herein.

**IT IS FURTHER ORDERED** that Plaintiff's motion for leave to proceed *in forma pauperis* (ECF Doc. 2) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel (ECF Doc. 3) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's emergency motion for temporary restraining order (ECF Doc. 4) is **denied**.

**IT IS SO ORDERED.**

DATED: This 27th day of September, 2018, at Topeka, Kansas.

s/ Sam A. Crow
**SAM A. CROW**
**U.S. Senior District Judge**