## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL R. CHUBB          )
                                   )
           Plaintiffs,       )
                                   )
             v.              )      Case No. 17-03220-SAC
                                   )
TIM KECK, *et al.*           )
                                   )
          Defendants.     )
                                   )

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS OR FOR SUMMARY JUDGMENT

### *NATURE OF CASE AND MOTION*

This is a civil rights action which seeks relief under 42 U.S.C. § 1983. Plaintiff appears *pro se,* and moved for leave to proceed *in forma pauperis.* By an order dated September 27, 2018, the Court directed Plaintiff to show cause why his complaint should not be dismissed. ECF 008. In response, Plaintiff filed an amended complaint. ECF 016. This prompted the Court's order of May 31, 2019. ECF 017.

In the May order, the Court directed service of process on Haleigh Bennett, Marshall Newell, Jeff Brown, Tony Schwabauer, Gerry Dirks, Heather Keller, Kevin Stegman and Christina Rose (the "Defendants"). It also required Larned State Hospital to provide a "*Martinez* report" concerning some of the allegations in the Amended Complaint. It directed that the Defendants' answers shall be filed within 60 days following receipt of the *Martinez* report. ECF 017 at 8.

Larned State Hospital filed its *Martinez* report with the Court and served a copy on counsel for the Defendants on September 16, 2019. ECF 032.

The Defendants have moved the Court to dismiss Plaintiff's claims under Fed. R. Civ. P. 12(b)(6) in lieu of filing answers. They also maintain that summary judgment against plaintiff's claims is proper on the record provided with LSH's *Martinez* report, including its attachments.

This memorandum is provided in support of these motions. Pursuant to D. Kan. Rule 56.1 (f), a separate Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion is provided with this memorandum. *See* Exhibit A.

**PLAINTIFF'S RESPONSE IS DUE DECEMBER 4, 2019,** absent an extension. See D. Kan. Local Rule 6.1(d)(2).

### *ALLEGATIONS IN AMENDED COMPLAINT AND STATEMENT OF UNCONTROVERTED FACTS*

*Background allegations and facts*:

1.      Michael Chubb ("Plaintiff" or "Chubb") is an adjudicated sexual predator and is involuntarily committed to the Kansas Sexual Predator Treatment Program ("SPTP") at Larned State Hospital ("LSH") since 2010. *See In re Chubb*, No. 08PR0645, 2010 WL 10913091, at *1 (Kan.Dist.Ct. Aug. 25, 2010), *aff'd in part and remanded in part*, 317 P.3d 148 (Kan. App. Jan. 24, 2014) (*unpub.*), *rev. denied* June 20, 2014; *Chubb v. Sullivan*, 50 Kan. App. 2d 419, 421, 330 P.3d 423 (2014), *rev. denied* Oct. 31, 2014.

2.      Defendants Haleigh Bennett, Program Manager ("Bennett"); Marshall Newell, SPTP Property Officer ("Newell"); Jeff Brown, LSH Chaplain ("Brown");

Tony Schwabauer, Chief of Security, LSH ("Schwabauer"); Gerry Dirks, Special Investigator ("Dirks"); Heather Keller, SPTP Property Officer ("Keller"); Kevin Stegman, Special Investigator ("Stegman"); and Christina Rose, SPTP Property Officer ("Rose") are listed as defendants, sued in their personal or individual capacities in this action. ECF 016. The Court authorized service of the Amended Complaint on these individuals. ECF 017 at 8.

*Freedom of religion allegations and facts*:

3.      Plaintiff alleges that he is a member of a Native American religious callout group called Gray Wolf. He states that he was kicked out of the callout and began practicing individually in April of 2018. Plaintiff alleges he repeatedly submitted requests to purchase religious supplies necessary to his worship, such as leather, beads, sage and tobacco, but that his requests were ignored or rejected by Bennett, Newell and Brown. He further alleges Defendant Brown coerced the members of Gray Wolf to pressure Plaintiff to rejoin the callout by ignoring their requests for supplies and promising to restore their privileges if Plaintiff rejoined the group. In addition, a member of Gray Wolf informed Plaintiff that Defendant Bennett planned to send Plaintiff to the punishment unit if he did not rejoin Gray Wolf. On August 4, 2018, Plaintiff rejoined Gray Wolf under duress. Plaintiff claims the actions of these defendants violated his First Amendment rights. ECF 016 at ¶¶ 14-28. *See also* Court's summary at ECF 017 at 2-3.[1]

---

[1] The Court found proper processing of this claim could not be achieved without additional information and directed preparation of a "Martinez report." ECF 017 at 3.

4.      As a resident of the SPTP, the Kansas sexually violent predator act, K.S.A. 59- 29a01, *et seq.* (the Act) gives involuntarily committed sexual predators at LSH, including Chubb, certain statutory rights. One such right Chubb enjoys is,

> To individual religious worship within the facility if the person desires such an opportunity, as long as it complies with applicable laws and facility rules and policies. The provisions for worship shall be available to all persons on a nondiscriminatory basis. No individual may be coerced into engaging in any religious activities.

K.S.A. 59-29a22(b)(8).

5.      LSH's SPTP has a written policy titled Religious Guidelines for Patients, Policy No.: P9-06. ECF 032 at 3, 29-45. The policy's purpose is, "To establish guidelines to practice a recognized religion." *Id.* at 29.

6.      The Act and LSH's SPTP prohibit Chubb from possessing or storing contraband. K.S.A. 59- 29a22(b)(18). ECF 032 at 3, 32, 34, 46-50, 52-54, 56-58, 61, 65, 184-86, & 190-93.

7.      SPTP Policy No.: 10.0, Contraband, clarifies, what items are considered contraband in the SPTP at LSH. ECF 032, at 3, 46-50. For example, contraband includes "any item prohibited pursuant to LSH or SPTP rules" and tobacco products, except for use in an approved religious activity. ECF 032 at 3, 46-47.

8.      To purchase religious-based items, Chubb was and is required to submit a "special purchase order through an approved vendor," and the "specifications, quantity, and value of such articles of property [were and] shall be governed by hospital policy and procedures." ECF 032 at 3, 31.

9.     Before Chubb could purchase and then obtain possession of religious-based property, he had to establish that he met basic requirements, which are set out in policies: the request must be submitted on a Resident Request Form, Form SPTP-30, see SPTP Policy No.: 5.2, Resident Property, ECF 032 at 3, 54; the purchase must be from an approved vendor, ECF 032 at 3, 31, or if Chubb wanted to purchase property from an unapproved vendor, the written request is submitted on a Property Variance-SSP/SPTP, Form CPR-399, ECF 032 at 3, 55; the property could not be contraband ECF 032 at 3, 46; and the LSH Chaplain had to approve the purchase, ECF 032 at 3, 31.

10.     SPTP approved vendors were, at relevant times, Dick Blick, Fire Mountain Gems, Haband, Herrschners, JJ Games, Keefe (LSH Canteen Services), Model Empire, United States Postal Office, Walgreens, Wal-Mart, and Walkenhorst. See SPTP Policy No.: 8.3, Resident Mail. ECF 032 at 56-63 (specifically at ECF 032 at 3-4, 56).

11.     LSH policy identifies the kind of personal religious items that Chubb can possess. This list is five feathers, sage, sweetgrass, cedar, smudging bowl, and bandana. ECF 032 at 4, 43.

12.     It was the LSH Chaplain's responsibility to approve Chubb's purchase of religious based items. ECF 032 at 4, 31.

13.     If a resident possesses property in contravention of policy, or they order property without approval, the property is confiscated and, at the resident's expense, returned to the vendor in accordance with SPTP Policy No.: 8.3. ECF 032

at 4, 61. When property is confiscated it is required that staff give the resident a
Denial or Restriction of Resident Rights (Staff Initiated), Form CPR-410b. *Id.*
Should the resident dispute the confiscation, the resident can request an
administrative review of the decision in accordance with SPTP Policy No.: 8.6,
Denial or Restriction of a Resident Right. ECF 032 at 4, 25-28.

14.     LSH policy recognizes that, "Patients at all privilege levels have the
right to individual religious worship within the hospital if the patient desires such
an opportunity. The provisions for worship shall be available to all patients on a
nondiscriminatory basis." ECF 032 at 4, 29.

15.     Consistent with K.S.A. 59-29a22(b)(8), LSH Policy 9-06 mandates, that
"No individual shall be coerced into engaging in any religious activity." ECF 032 at
4, 29.

16.     In January 2017, Chubb joined the Gray Wolf call-out; eventually
becoming an elder. ECF 032 at 5, 64.[2] On April 4, 2018, Defendant Brown, LSH
Chaplain, received an e-mail from SPTP property staff that direct care staff found
tobacco in Chubb's medicine bag. *Id.*

17.     Chubb's storing of tobacco in the medicine pouch violated LSH Policy
9-06. ECF 032 at 5, 32. Brown inspected the medicine bag and confirmed the
presence of tobacco. ECF 032 at 5, 64. A few hours later, Brown was notified that
Gray Wolf had expelled Chubb from the call-out. *Id.* After hearing of Chubb's
expulsion, Brown met with Gray Wolf leaders to discuss their action against Chubb.

---

[2] ECF 032 at 64-66 is Defendant Jeff Brown's Affidavit.

*Id.* The leaders expressed concern that Chubb's violation of the policy could lead to the shutting down of the Gray Wolf call-out had they not taken the action. *Id.* Brown explained that there was no consideration given to shutting down the Gray Wolf call-out because of Chubb's actions. *Id.*

18.     Because Chubb wanted to continue with individual religious worship, Brown scheduled weekly opportunities; however, with the understanding that this was temporary and that the goal was Chubb's readmission to Gray Wolf. ECF 032 at 5, 64. Because of staff shortages, there were times that Chubb's individual religious worship coincided with other Native American call-outs, including Red Wolf and Gray Wolf. ECF 032 at 5, 64-65.

19.     On August 3, 2018, SPTP staff notified Brown that Chubb was rejoining the Gray Wolf call-out, necessitating the discontinuance of his individual worship. ECF 032 at 5-6, 65. Brown made no promises or threats to the leadership of Gray Wolf to coerce Chubb's re-admittance to the call-out. *Id.* Brown had no role in Gray Wolf call-out's decisions to expel Chubb or to later readmit him. *Id.*

20.     From April 4, 2018 to August 3, 2018, Chaplain Brown scheduled seven weekly individual worship opportunities for Chubb, which included; pipe and drum ceremony on Friday, smudging from Saturday through Thursday, and healing ceremony on special request; with Chubb participating in most, if not all, of the weekly opportunities. ECF 032 at 6, 65.

21.     On February 12, 2018, before his expulsion from Gray Wolf, Chubb submitted several request forms (SPTP-30), with attached property variances (CPR-

399) seeking to purchase from two unapproved vendors–Wandering Bull, LLC and Crazy Crow Trading Post–what he considered to be religious-based items for use at the Gray Wolf call-out. ECF 032 at 5, 65, 67. Chaplain Brown responded to the requests, approving and denying some of the requests. ECF 032 at 5, 65, 67-72. On February 13, 2018, Chubb submitted a written request to discuss with Brown the denial of the request to purchase leather and beads. ECF 032 at 5-6, 65, 73.

22.     During the conversation with Chubb, Brown explained that the reason for the denial of the leather was because working leather requires tools which are considered contraband under SPTP Policy No.: 10.0. ECF 032 at 65. Brown does not recall Chubb submitting a property variance form (CPR-399) requesting to purchase beads. *Id.*

23.     After his expulsion from Gray Wolf, Chubb called his individual worship the Black Wolf call-out. ECF 032 at 65. On April 26, 2018, as leader of Black Wolf call-out, Chubb submitted a resident request form (SPTP-30) "requesting to purchase sage and tobacco for religious purposes." ECF 032 at 65, 74. Chaplain Brown responded to the request on May 3, 2018. *Id.* Although the response is not clear from the SPTP-30, Brown did not deny Chubb's request, instead took the opportunity to explain to Chubb that before purchasing religious-based items, Chubb must submit a property variance form (CPR-399) for the Chaplain's consideration and approval. ECF 032 at 65.

24.     On May 20, 2018, Chubb submitted a resident request form (SPTP-30), notifying Chaplain Brown that he was purchasing a smudge bowl, a lighter, and a

- 8 -

bottle of butane. ECF 032 at 65, 75. When the items arrived at LSH, staff confiscated the lighter and gave Chubb a staff initiated rights restriction form CPR-410b. ECF 032 at 65, 76. The reason given for confiscating the lighter was that Brown had not approved the purchase. *Id.*

25.     In accordance with SPTP Policy No.: 8.6, ECF 032 at 25-28, Chubb filed a request for an administrative review of the denial of him possessing the lighter. ECF 032 at 77. The LSH appointed hearing affirmed the denial. ECF 032 at 79-80. SPTP Staff have no record that Chubb filed an appeal with the Kansas Office of Administrative Hearings. ECF 032 at 7.

26.     Additionally, the bottle of butane was confiscated and returned to the vendor because Brown had not approved Chubb's purchase of the fuel. ECF 032 at 65, 83.

27.     To facilitate Chubb's individual religious worship, Brown approved Chubb having possession of the smudge bowl. ECF 032 at 65.

28.     On July 22, 2018, Chubb requested approval to purchase sage from azuregreen.com and tobacco from SmokeShop.com, both unapproved vendors. ECF 032 at 84. Brown, in response to the request, inquired into Chubb's need for the additional materials on May 3, 2018. *Id.* Although the response is not clear from the SPTP-30, Brown did not deny Chubb's request, instead took the opportunity to explain to Chubb that before purchasing religious-based items, Chubb must submit a property variance form (CPR-399) for the Chaplain's consideration and approval. ECF 032 at 65.

29.     On August 3, 2018, staff gave Chubb a staff initiated rights restriction (form CPR- 410b) when he received a package from AzureGreen. ECF 032 at 85. Chubb had not received Brown's approval to purchase any item from AzureGreen. ECF 032 at 65, 85. Chubb's understanding of the approval procedure is evident through the resident request form (SPTP-30) he submitted on August 5, 2018, requesting reimbursement for the purchase of sage and tobacco. ECF 032 at 86. Brown's August 16, 2018, response explained that the tobacco is in his possession and that Chubb should have received "your right restriction." ECF 032 at 86. On August 3, 2018, Chubb signed the CPR-410b acknowledging receipt of the rights restriction. *Id.*

30.     In accordance with SPTP Policy No.: 8.6, ECF 032 at 18-24, Chubb filed a request for informal hearings form (CPR-410d) for an administrative review of the denial of him possessing the sage he had purchased. ECF 032 at 88. The LSH appointed hearing affirmed the decision. ECF 032 at 89-90. SPTP Staff have no record that Chubb filed an appeal with the Kansas Office of Administrative Hearings. ECF 032 at 8.

31.     On August 11, 2018, and August 27, 2018, Chubb filed resident request forms (SPTP-30) complaining that tobacco he purchased was being withheld. ECF 032 at 91, 92. To each complaint, Brown explained that the tobacco will be retained by staff and provided to Chubb for his use. *Id.*

32.     LSH Policy No.: 9-06 sets out that a resident will not have possession of tobacco, but the tobacco will remain under the control of LSH staff and Chaplain until needed for "Native American Pipe ceremonies." ECF 032 at 31.

*Interference with mail allegations and facts*

33.     Plaintiff lists a number of instances where Defendants allegedly interfered with his mail. Plaintiff alleges:

a)      Plaintiff received a Nintendo DS in the mail from an approved vendor on September 20, 2017. Defendant Rose informed Plaintiff that LSH security officers wanted to search the package. Plaintiff requested and was denied a "shakedown" report. Defendant Rose said his request was a refusal and issued Plaintiff a rights restriction for restriction of his mail.

b)      On November 28, 2017, LSH Security Officer Kirts opened and searched a package containing an audio equalizer Plaintiff had ordered from an authorized vendor. Plaintiff consented to this after being told the equalizer would not be allowed into the building if he did not consent. The opening was performed outside Plaintiff's presence.

c)      Plaintiff states he received approval to order a RangeMaster X-Treme (a long-range FM transmitter). When it arrived, Defendant Newell issued a rights restriction and returned the package without notice to Plaintiff. Plaintiff alleges Defendant Newell took this action in retaliation for Plaintiff filing a grievance against LSH Security for opening his mail outside

his presence. According to Plaintiff, these events were duplicated two more times.

d)    On two occasions, Plaintiff gave letters he had written to his court-appointed attorney to unit staff, requesting postage be applied in accordance with the indigent postage policy. Defendant Bennett never responded to Plaintiff's indigent request and the attorney never received Plaintiff's letters.

e)    Defendant Bennett failed to process Plaintiff's response to a motion to dismiss in a case pending before the Kansas Office of Administrative Hearings, which resulted in Plaintiff's case being dismissed.

f)    Plaintiff's court-appointed attorney handling his annual civil commitment review attempted to send him the district court's decision denying him a hearing. The letter was returned to the attorney with "REFUSED" written on the front. The attorney remailed it, enclosing the original sealed envelope in a second envelope, and Plaintiff received the notice, but by then it was too late for Plaintiff to appeal the district court's decision.

ECF 016 at ¶¶ 67-84. *See also* Court's summary at ECF 017 at 3-5.[3]

34.    LSH's SPTP and the Act grant SPTP residents the right, "To send and receive mail with reasonable limitations. A person's mail is subject to physical

---

[3] The Court found proper processing of this claim could not be achieved without additional information and directed preparation of a "Martinez report." ECF 017 at 5.

examination and inspection for contraband, as defined by facility rules and policies."
K.S.A. 59-29a22(b)(15).

35.     SPTP Policy No.: 8.3, Resident Mail is intended, "To establish guidelines associated with the resident's right to communicate by mail and to establish procedures to reduce the introduction of contraband into the facility to ensure a safe and secure environment, as well as, ensure public/community safety as a whole." ECF 032 at 56.

36.     SPTP Policy No.: 10.0, Contraband defines what is considered contraband within the SPTP. ECF 032 at 46-50.

37.     On September 20, 2017, when Chubb received a package from JJGames.com, staff were concerned about the contents, and withheld delivery pending an inspection of the package. ECF 032 at 95. Staff's action was consistent with SPTP Policy No.: 8.3. ECF 032 at 56-60 (subparagraph I.), 61 (subparagraph III. J.). Chubb's refusal to allow staff the opportunity to open the package led to Chubb being a staff-initiated rights restriction form (CPR-410b) under SPTP Policy 8.6. ECF 032 at 101-02.

38.     In the amended complaint, Chubb complains that staff did not give him a "shakedown" report when delivery of the package was withheld. The record indicates that staff issued a Shakedown Report-SPT (CPR-10.8) on September 20, 2017, identifying the package from JJGames.com. ECF 032 at 95. Additionally, on September 21, 2017, records indicate the Nintendo DS was given to Chubb. ECF 032 at 96.

39.     SPTP staff have no record that Chubb submitted a request for informal hearing form (CPR-410d) seeking to exhaust available administrative remedies pursuant to SPTP Policy No.: 8.6. ECF 032 at 10.

40.     On November 29, 2017, Chubb filed a grievance under SPTP Policy No.: 7.1 alleging that staff in violation of SPTP Policy No.: 8.3 coerced him into giving them permission to open the package containing an equalizer without him present. ECF 032 at 104.

41.     In response to Chubb's grievance, the SPTP grievance office explained that staff had Chubb's verbal permission to open the package. ECF 032 at 104. Chubb refused to sign receipt of the grievance officer's decision. *Id.*

42.     SPTP has no record that Chubb sought an appeal of the grievance officer's decision to the SPTP program director or their designee. ECF 032 at 10.

43.     On December 21, 2017, Chubb submitted a resident request form (SPTP-30) seeking to purchase a RangeMaster from Walmart.com. ECF 032 at 106.

44.     On December 29, 2017, a package was received at the facility that had been sent to Chubb by Adam Dager/PayPal, an unapproved vendor, and when the package was going through the tomography machine its contents seemed suspicious. ECF 032 at107. When Chubb arrived at mail call to retrieve this package, staff gave him a staff initiated rights restriction form (CPR-410b). ECF 032 at 107-09.

45.     Pursuant to SPTP Policy No.: 8.3, because the package came from an unapproved vendor and Chubb could not provide a property variance form (CPR-

399) showing approval to receive the package from the vendor, the package was returned to the vendor. ECF 032 at 61, 107.

46.    Although Chubb's order was made through Walmart's website, the vendor of the RangeMaster was not Walmart, but DAGCORP, LTD, a third party. ECF 032 at 110-12. Further proof that the package did not come from Walmart, an approved vendor, is that the receipt notes the RangeMaster "cannot be returned to Walmart stores." ECF 032 at 111.

47.    SPTP staff have no record that Chubb sought an administrative review of the staff initiated rights restriction under SPTP Policy No.: 8.6, Denial or Restriction of a Resident Right. ECF 032 at 11.

48.    A similar incident involving Chubb receiving a package from an unapproved vendor with suspicious contents occurred on January 4, 2018. ECF 032 at 113.

49.    Based on staff research of the sender's address, it was determined that the vendor was not Walmart, but, Marks Garden Shoppe, an unapproved vendor. ECF 032 at 113-22.

50.    Consequently, in accordance with SPTP Policy No.: 8.3, staff issued Chubb a staff initiated rights restriction form (CPR-410b) and returned the package to the vendor. ECF 032 at 113-22. SPTP staff have no record that Chubb sought an administrative review of the staff initiated rights restriction pursuant to SPTP Policy No.: 8.6, Denial or Restriction of a Resident Right. ECF 032 at 12.

51.     On January 16, 2018, Chubb filed a grievance under SPTP Policy No.:
7.1, complaining that staff gave him a staff initiated rights restriction form (CPR-
410b) for a package from Walmart.com. ECF 032 at 123. The grievance was
assigned number 0012018-031. The grievance officer did not address the merits of
Chubb's grievance because Chubb chose to initiate an administrative process not
applicable to the nature of his complaint. ECF 032 at 125.

52.     Because Chubb's grievance complains of receiving a rights restriction,
the applicable administrative review process is established by SPTP Policy No.:  8.6.
Moreover, SPTP Policy No.: 7.1 states, "The grievance process shall not be used in
any way as a substitute for, or as part of, the administrative review process outlined
in . . . SPTP Policy No.: 8.6 ...." ECF 032 at 19.

53.     SPTP staff have no record that Chubb sought an administrative review
of the staff initiated rights restriction, ECF 032 at 128, under SPTP Policy No.: 8.6,
Denial or Restriction of a Resident Right. ECF 032 at 12.

54.     However, Chubb continued to seek administrative review through LSH
Policy No.: 7.1. Chubb sought the Step IV program director/designee review of the
grievance officer's decision. ECF 032 at 126. The program director/designee affirmed
the grievance officer's decision. ECF 032 at 127.

55.     Chubb filed a request for review to the Kansas Office of Administrative
Hearings in accordance with K.S.A. 59-29a22(f) of three adverse program decisions,
including grievance number 0012018-031. ECF 032 at 137. The other two
grievances appear not to be a part of the case before this Court.

56.     The presiding officer dismissed Chubb's appeal of the three cases for failing to timely file the appeal. ECF 032 at 165.

57.     Like the December 29, 2017 and January 4, 2018 incidents, the package received on January 16, 2018, came from an unapproved vendor, not Walmart. ECF 032 at 168-72. And, like the other times, the package was returned to the vendor as set out in SPTP Policy No.: 8.3. ECF 032 at 13.

58.     SPTP staff have no record that Chubb sought an administrative review of the staff initiated rights restriction under SPTP Policy No.: 8.6, Denial or Restriction of a Resident Right. ECF 032 at 13.

59.     Between May 28, 2018 and December 27, 2018, Chubb submitted ten resident request forms (SPTP-30) seeking approval of "indigent postage" to send mail to several individuals, including Charles Pike; the Kansas Office of Administrative Hearings; Sedgwick County District Court; and the United States District Court; each approved by staff. ECF 032 at 173-82.[4]

60.     However, there is no record of resident request forms (SPTP-30) matching the dates of July 20, 2018 and August 3, 2018, which Chubb alleges were dates of requested "indigent postage" for correspondences to be sent to Charles Pike. ECF 032 at 13.

---

[4]Chubb identifies Charles Pike as his court-appointed counsel. ECF 016 at ¶¶ 74 & 76.

61.     SPTP maintained a Patient Outgoing Mail Log (CPR-391) for Chubb. ECF 032 at 183.[5] That mail log shows that on July 22, 2018 and August 5, 2018, mail was sent to Charles Pike. Additionally, the mail log indicates that on November 23, 2018, mail was sent to the Kansas Office of Administrative Hearings. *Id.*

62.     SPTP has no record of the return of a letter from Mr. Gerald Domitrovic. ECF 032 at 14.

*Unreasonable Search and Seizure allegations and facts*

63.     In his unreasonable search and seizure count, Plaintiff complains of several incidents. He alleges:

    a)      May 1, 2017 – Defendant Schwabauer searched Plaintiff's room without consent or a search warrant. He seized audio and USB cables owned by Plaintiff.

    b)      June 20, 2017 – Defendant Keller seized all of Plaintiff's property. She told Plaintiff she was instructed by Defendant Bennett to send all of his electronics to Defendant Dirks.

    c)      July 7, 2017 – Plaintiff was interrogated by Defendants Dirks and Schwabauer, without being Mirandized, and was told the June 20 search and seizure was directed by Defendant Bennett.

---

[5] The exhibit shows entries for outgoing mail in April through December of 2018. This brackets the times that Plaintiff claims legal mail was not received or delivered. See ECF 016, at ¶¶ 74, 76, 78 & 79.

d)      June 19, 2018 – Plaintiff was charged in state court with one count of violating K.S.A. 21-5914(a)(1), Traffic in Contraband, based on the June 20, 2017, search and seizure and the July 7, 2017, interrogation. (Case No. 2018-CR-000071, Pawnee County District Court; dismissed November 6, 2018.)

e)      In addition, Plaintiff mentions more generally several seizures of property that are not related to a criminal investigation. He also alleges in a separate count that he has never been compensated for the seized or damaged property.

ECF 016 at ¶¶ 43-57, 103-07. *See also* Court's summary at ECF 017 at 5.[6]

64.     The Act states, "In no event shall a person be allowed to possess or store contraband." K.S.A.  59-29a22(b)(18).

65.     SPTP Policy No.: 10.8, Room and Area Security Searches, states "guidelines for area and room searches, discovery, control and disposition of contraband and/or prohibited items." ECF 032 at 184-86. The policy informs staff and residents that "any living unit or room is subject to search at any time without the resident's presence, knowledge or permission." *Id.*

66.     On May 1, 2017, staff conducted a search of Chubb's room. During the search, Staff seized USB cords. ECF 032 at 187. Based on e-mails received from LSH, Former Chief of Security Tony Schwabauer initiated the search of other

---

[6] The Court found proper processing of this claim could not be achieved without additional information and directed preparation of a "Martinez report." ECF 017 at 5-6.

residents' rooms, including Chubbs. ECF 032 at 188-89. Staff expressed concern

that Chubb had "property stickers somewhere in his room or storage." *Id.*

68. The USB cords found in Chubb's room are deemed media contraband

"as other computer accessories/components" under SPTP Policy No.: 5.18, Resident

Media. ECF 032 at 190-94 (paragraph IL, C. 12).

68. Chubb filed a grievance related to the May 1, 2017 search. ECF 032 at

195-200. The underlying complaint Chubb described was a negative impact to his

physical wellbeing through emotional distress from the search. *Id.* at 196. Chubb

requested a review by the SPTP Program Director/Designee. *Id.* at 198. The SPTP

Program Director/Designee encouraged Chubb to, "Please continue to work on these

issues with your therapist." *Id.* at 200. SPTP staff have no record that Chubb filed

an appeal with the Kansas Office of Administrative hearings. ECF 032 at 15.

69. On June 21, 2017, SPTP Property Officers ("PO") Newell, Rose and

Keller transported property belonging to Plaintiff and gave it to for former Special

Investigator Defendant Dirks for inspection. Chubb had been moved from Dillon

West 2 to Dillon West 1 at LSH. ECF 032 at 201-04[7] (specifically ECF 032 at 201).

70. POs Newell, Rose and Keller each provided an LSH Safety/Security

Witness Statement at the time. The statements each provided:

> Property staff received an email from Haleigh on June 19, 2017,
> stating we were going to be moving 2 Residents on Dillon Building.
> Michael Chubb and another Resident were going to be switching units
> from Dillon West 1 and the Dillon West 2. Mr. Chubb was to be moved
> from Dillon West 1 Unit to Dillon West 2 Unit. When Mr. Chubb was
> moved to Dillon West 2, Property Staff Tina, R., Heather K., and

---

[7] This is the Affidavit of Kevin Stegman.

Marshall N. packed out his room and took all of Michael's personal property that was in his room on Dillon West 1 Unit down to the Dillon Property Room (W021) on Dillon Building. When Property Staff started to inventory Michael's property, Property [S]taff were told to take all of Mr. Chubb's electronic items to Special Investigator Jerry Dirks at the Fire station. Property Staff packed up all of Michael's electronics and took them to Fire Station and handed them to Jerry Dirks.

ECF 032 at 201-02.

71.     After Plaintiff's property was removed from his room and brought to

Investigator Dirks, on July 11, 2017 at approximately 1400 hours, Dirks conducted

a search of Plaintiff's Koramzi, a type of modulator box. And Dirks' May 31, 2018

provided:

On 07/11/2017 at approx. 1400 hrs, I started to search property belonging to Michael Ray Chubb, W/M, 04/19/1966. Chubb is a resident of the Sexual Predator Treatment Program (SPTP), Larned State Hospital (LSH), Larned, Pawnee County, KS. Chubb's property was all electronic equipment that Chubb had in his room. While looking at a Koramzi RF modulator box, I noticed something was rattling inside the component. I saw it appeared the screws holding the unit together had been disturbed. I saw the USB port on the front of the machine was still covered by a LSH property sticker. I removed the screws and removed the top of the box. I saw a second USB port had been soldered into the internal circuit board. I saw the USB port contained a small silver 32 GB thumbdrive. I collected the modulator box and contents as evidence and secured it in the Safety/Security evidence room. This item will be transferred to the Internet Crimes against Children Task Force, Wichita, KS for forensic analysis. I have nothing further to report at this time.

ECF 032 at 202-03.

72.     The Forensic analysis conducted by Internet Crimes against Children

(ICAC) did not reveal any sexual explicit material and/or child pornography;

however, Dirks concluded that the 32 G thumb drive and Koramzi RF Modulator box constituted contraband under SPTP Policies 10.0 and 5.18. ECF 032 at 203.

73.     The thumb drive and Koramzi RF Modulator box were held for evidentiary purposes. ECF 032 at 204.

74.     The results of Investigator Dirk's findings were presented to the Pawnee County Attorney for filing of a criminal complaint charging Michael Chubb with possession of contraband. ECF 032 at 204.

75.     On September 28, 2018, a preliminary hearing commenced in Pawnee County District Court, Case No. 2018-CR-00007. The Court granted the State motion to dismiss the case without prejudice because of issues with the chain of custody involving the 32 G thumb drive and Koramzi RF Modulator box. And the Court found that the parties agreed the evidence seized would be disposed of in accordance with SPTP policy. ECF 032 at 204.

## *ARGUMENT*

1.     *The legal framework of defendants' motion is stated in the following.*

The rules pertaining to defendants' motion are well-known to the Court. For plaintiff's benefit, they are:

a.     As 28 U.S.C. § 1915 applies, this case should be dismissed if the Court determines the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant(s) who is immune from such relief. *Beyer v. Deslauriers*, No. 17-3002, 2019 WL 2409603 *2 (D. Kan. June 7, 2019) (*discussing* 28 U.S.C. § 1915(e)(2)(B)).

Determining whether dismissal is appropriate under § 1915(e)(2)(B)(ii), the plaintiff's complaint is analyzed under the same sufficiency standard as a Rule 12(b)(6) motion to dismiss. *Key v. Bemis*, 500 F.3d 1214, 1217-18 (10th Cir. 2007). The same or substantially the same is true if dismissal is sought under § 1915(e)(2)(B)(iii). *Cf. Chavez v. Robinson*, 817 F.3d 1162, 1169 (9th Cir. 2016), *as amended on reh'g* (Apr. 15, 2016); *Hogan v. Oklahoma Dep't of Corr.*, 172 F.3d 878 (10th Cir. 1999) (analyzing motion to dismiss on qualified immunity by 12(b)(6) standard).

   b.   While Fed. R. Civ. P. 12(b)(6) "does not require 'detailed factual allegations,'" it demands more than "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Under the rule, the Court will assume that the factual allegations in the complaint (here the amended complaint) are true. *Id.* But this requirement does not extend to every assertion made in a complaint. The court is "'not bound to accept as true a legal conclusion couched as a factual allegation.'" *Id.* (*quoting. Twombly*, 550 U.S. at 555). Also, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citations omitted).

   In short, to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678 (quoting Twombly, 550 U.S.

at 570). Essentially, "the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007). The court also will grant a motion to dismiss under Fed. R. Civ. P. 12(b)(6) if an issue of law is dispositive. *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).

      c.      Typically, a "*Martinez* report" may not be used at the motion to dismiss stage to resolve factual disputes. *Smith v. Trapp*, 2018 WL 587230, at *1 (D. Kan. 2018) (*citing McAdams v. Wyo. Dept. of Corr.*, 561 F. App'x 718, 720 (10th Cir. 2014)). Therefore, in reviewing a motion to dismiss, if the Court considers materials that were not attached to the complaint or incorporated into the complaint by reference—including documents attached to a *Martinez* report—it generally must convert the motion to one for summary judgment. *Id.* (*citing GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384-85 (10th Cir. 1997); *Ketchum v. Cruz*, 961 F.2d 916, 919 (10th Cir. 1992)).[8]

      Thus, the Defendants request that the Court decide their alternative motion for summary judgment if it finds consideration of the *Martinez* report, ECF 032, is appropriate. Fed. R. Civ. P. 12(d). *E.g., Snavely v. Kan. Dep't of Corr.*, 2011 WL 1230514, at *3 (D. Kan. 2011) ("Because the court has considered the *Martinez* report in evaluating defendants' claims, the court resolves the motion under the

---

[8] The Tenth Circuit has adopted an exception to this. When plaintiff challenges policies or established procedures, the *Martinez* report's undisputed description of the policies or procedures are treated like a written document attached to plaintiff's complaint. *Hall v. Bellmon*, 935 F.2d 1106, 1112-13 (10th Cir. 1991).

defendants' request for summary judgment"); *Jones v. Roberts*, 2013 WL 1308272, at *1 (D. Kan. 2013) ("The court has considered documents and affidavits attached to the Martinez Report ... Consequently, this motion is resolved as one for summary judgment").

Plaintiff should respond to the Defendants' motion assuming Fed. R. Civ. P. 56's procedures apply. *See* Exhibit A (reciting procedures and attaching a copy of the federal and local rules).

2.   *Plaintiff's claims should be dismissed or summary judgment should be entered against the claims under the doctrine of qualified immunity.*

A.   *Defendants have immunity against Plaintiff's freedom of religion claim.*[9]

These Defendants assert the qualified immunity defense. Now, plaintiff must show facts that "make out a violation of a constitutional right," and demonstrate that "the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson v. Callahan*, 555 U.S. 223, 232 (2009) (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). The Court is given discretion to determine "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Id.* at 236. But granting qualified immunity is appropriate unless the plaintiff shoulders his "heavy burden" to make **both** parts of this showing. *Stevenson v. Cordova*, 733 F. App'x 939, 942 (10th Cir.

---

[9] The Religious Land Use and Institutionalized Persons Act is not involved here because the causes of action, which the Court has allowed to go forward, are all individual-capacity claims. *Stewart v. Beach*, 701 F.3d 1322, 1334 (10th Cir. 2012); *McCoy v. Aramark Correctional Services*, No. 16-3027, 2018 WL 1366267 (D. Kan. March 16, 2018).

2018) (*unpub.*) (*citing Carabajal v. City of Cheyenne*, 847 F.3d 1203, 1208 (10th Cir. 2017), *cert. denied* 138 S.Ct. 211 (2017)).

The Tenth Circuit's decision in *Carr v. Zwally*, 760 Fed.Appx. 550 (10th Cir. Jan. 8, 2019) (*unpub.*), is instructive concerning Chubb's allegation that his right to free exercise of religion has been abridged. The circuit's panel explained that an individual defendant must have acted with a discriminatory purpose for personal liability from denial of Free Exercise. The court wrote:

> Regarding claimed violation under the First Amendment's Free Exercise Clause: state of mind is purposeful discrimination. "The Supreme Court has stated that "[w]here the claim is invidious discrimination in contravention of the First ... Amendment[ ], [its] decisions make clear that the plaintiff must plead and prove that the defendant acted with discriminatory purpose." [Ashcroft v. ] Iqbal, 556 U.S. [662, ] at 676 (*citing Church of Lukumi Babalu Aye, Inc. v. Hialeah*, 508 U.S. 520, 540-541 [ ] (1993) (plurality op. of Kennedy, J.)). "[P]urposeful discrimination.... involves a decisionmaker's undertaking a course of action "'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group.'" *Id.* at 676–77 [ ] (alteration in original) (*quoting Personnel Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279, [ ] (1979)). Thus, to plausibly state a claim of religious discrimination, Mr. Carr "must plead sufficient factual matter to show that" Mr. Zwally took his Bibles and religious materials "not for a neutral ... reason but for the purpose of discriminating on account of ... religion." *Id.* at 677, [ ]; *see also Pahls v. Thomas*, 718 F.3d 1210, 1230 n.8 (10th Cir. 2013) ("[W]here liability is to be imposed upon an individual defendant for discrimination in violation of the First Amendment, a plaintiff must prove a discriminatory purpose, supported by evidence of the defendant's subjective motivations.").

*Id.* at 554.

Plaintiff references Defendants Bennett, Brown and Newell in his "Freedom of Religion" "Cause of Action." ECF ¶¶ 14-28.[10] *See also* UF[11] ¶ 3. However, the amended complaint fails to plausibly allege that any of these Defendants acted with discriminatory purpose. *Cf. Carr,* 760 Fed.Appx. at 55* (approving dismissal, finding nothing in the complaint–which alleged at most "personal animus"–provided "sufficient factual matter to show that defendant took plaintiff's Bibles and religious materials 'not for a neutral ... reason but for the purpose of discriminating on account of ... religion'").

Putting the absence of alleged discriminatory purpose aside, Plaintiff's well-pleaded allegations of fact do not support that his rights under the Free Exercise Clause were violated, much less abridgement of a clearly established constitutional right.

The United States Supreme Court, in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), established four considerations a court should use when weighing restrictions on a fundamental liberty against the government interests necessitating the restrictions.[12] Authority supports that a slightly modified *Turner*

---

[10] He also mentions "Kidd" and "Mrs. Schmidt." However, they are not parties.

[11] UF refers to the Statements of Uncontroverted Facts, *supra,* in this memorandum.

[12] *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-53 (1987) (applying *Turner's* reasonableness determination to find prison officials had acted in reasonably precluding Islamic inmates from attending weekly Friday religious service). In *Solton v. Anderson*, No. 18-3129, 2018 WL 2971785 (D. Kan. June 12, 2018), this Court noted: "[A] religious exercise is substantially burdened" where "a government prevents participation in conduct motivated by a sincerely held religious belief." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010). However, not "every infringement on a religious exercise will constitute a substantial burden." *Id*. at 1316.

test should be employed in the civil confinement context. *See Chubb v. Sullivan*, 50 Kan. App. 2d 419, 440-41, 330 P.3d 423 (2014) (adopting the modified *Turner* test and collecting other cases which hold government's interest in retribution or punishment will not support restriction on exercise of fundamental rights in civil confinement).

In his amended complaint, Plaintiff complains that he was prohibited from purchasing some religious supplies for his individual use, when he was allowed to individually engage in his religious observances. He also asserts that he was coerced into "rejoining" Gray Wolf, a "religious callout group," for his religious observances. ECF 016 ¶¶ 14-24. *See also* UF ¶ 3. But he does not contend that the restriction on some purchases prevented his observances. He also does not allege that his sincerely held religious beliefs varied from those of the Gray Wolf group or that his religion requires individual observances. In short, he has not alleged restriction of the practice of his faith.

And, as to the denied of purchases, the amended complaint references SPTP Policy P9-06. *See* ECF 016 ¶¶ 11-13. Nothing in the amended complaint states facts which tend to show the asserted interference with his desired purchases was nothing other than compliance with the policy. A copy of that policy is in the *Martinez* report. *See* ECF 032 at 29-45. Under Policy P9-06, Chubb was required to submit a "special purchase order through an approved vendor," and the "specifications, quantity, and value of such articles of property [were and] shall be

governed by hospital policy and procedures" in order to purchase religious-based items. *See* ECF 032 at 3, 31.

The United States Supreme Court, in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), established four considerations a court should use when weighing restrictions on a fundamental liberty against the government interests necessitating the restrictions.[13] Authority supports that a slightly modified *Turner* test should be employed in the civil confinement context. *See Chubb v. Sullivan*, 50 Kan. App. 2d 419, 440-41, 330 P.3d 423 (2014) (adopting the modified *Turner* test and collecting other cases which hold government's interest in retribution or punishment will not support restriction on exercise of fundamental rights in civil confinement).

Limiting (albeit not prohibiting) the purchase and ultimate burning of tobacco and sage, access and use of lighters and butane, and products (like leather and beads) which require access to tools that are dangerous or encourage conflict or

---

[13] *See also O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348-53 (1987) (applying *Turner's* reasonableness determination to find prison officials had acted reasonably in precluding Islamic inmates from attending weekly Friday religious service). In *Solton v. Anderson*, No. 18-3129, 2018 WL 2971785 *2 (D. Kan. June 12, 2018), this Court noted:

> "[A] religious exercise is substantially burdened" where "a government prevents participation in conduct motivated by a sincerely held religious belief." *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1315 (10th Cir. 2010). However, not "every infringement on a religious exercise will constitute a substantial burden." *Id*. at 1316.

theft, is reasonable under *Turner* and modified *Turner* factors.[14] *See Murray v. Edwards Cty. Sheriff's Dep't*, 453 F. Supp. 2d 1280, 1291-92 (D. Kan. 2006), *aff'd*, 248 F. App'x 993 (10th Cir. 2007). *See also e.g., Kindred v. Allenby*, No. 114CV01652, 2019 WL 4013463, at *3 (E.D. Cal. Aug. 26, 2019); *Dove v. Patuxent Facility*, No. CV DKC-18-1847, 2019 WL 2373425, at *7 (D. Md. June 5, 2019); *Luther v. White*, No. 5:17-CV-138-TBR, 2019 WL 2214009, at *4 (W.D. Ky. May 22, 2019); *Martinez v. Richardson*, No. 6:15CV732, 2017 WL 9289644, at *17 (E.D. Tex. Jan. 19, 2017), *report and recommendation adopted*, No. 6:15CV732, 2017 WL 525768 (E.D. Tex. Feb. 8, 2017). Further, limiting the number of approved vendors is also reasonable. *See Chubb v. Sullivan*, 50 Kan. App. 2d 419, 435-45, 330 P.3d 423 (2014). *See also* UF ¶ 35.

Moreover, even if Plaintiff had pleaded a plausible Free Exercise Clause claim, the uncontroverted facts establish that the Defendants reasonably attempted to accommodate Plaintiff's exercise of his stated religious faith. *See* UF ¶¶ 4-32. Accordingly, summary judgment is proper because there was no denial of a constitutional right, much less a denial of a clearly established constitutional right by any of the Defendants.[15]

---

[14] Policy P9-06 lists some of the concerns for order or security addressed by the policy: "proper utilization of available space"; "safety from fire and other physical hazards"; "dangerousness of the item, including its potential for use as a weapon"; and "the item's value or attractiveness encourages conflicts or theft." ECF 032 at 33.

[15] Plaintiff has not raised the claim, but his allegations that others were allowed to purchase Sage should not implicate Equal Protection and Establishment Clause concerns. *See* ECF ¶¶ 21 & 22. Denying a privilege to adherents of one religion while granting it to others may constitute discrimination on the basis of religion in violation of the Equal Protection Clause or Establishment Clause. However, Plaintiff does not

B.    *Defendants have immunity against Plaintiff's mishandling of mail claim.*

To prevail on a §1983 mishandling of mail claim, plaintiff must prove: "(1) that his mail was not delivered or was mishandled, (2) that the named defendant was responsible for such nondelivery or mishandling and (3) that ... [the named defendant] acted intentionally or with deliberate indifference." *Brown v. Kochanowski*, 2012 WL 4127959, *10 (D. Kan. 2012) (*quoting Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir.1996), internal citations and quotation marks omitted).

Whether an intentional disruption in the exchange of mail is prohibited, turns on the defendant's justification. Inmates retain only First Amendment rights not incompatible with their status as prisoners or with the legitimate penological objectives of the corrections system. *Pell v. Procunier*, 417 U.S. 817, 832 (1974). *See Brown v. Kochanowski*, 2012 WL 4127959 (D. Kan. 2012) (repeating the rule). In-custody, convicted sexual predators possess the same rights as prisoners in this context. *Merryfield v. Jordan*, No. 09-3259, 2011 WL 382551, at *3 (D. Kan. Feb. 3, 2011), *aff'd*, 431 F. App'x 743 (10th Cir. 2011).

"In the case of unprivileged incoming and outgoing mail, regulation by prison officials is essentially an administrative matter in which the courts will not intervene." *United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999), *cert.*

---

claim that the Defendants treated him differently because of any suspect classification and has not alleged that the distinction between himself and the other inmates was not reasonably related to some legitimate penological purpose. See *Thompson v. Gibson*, 289 F.3d 1218, 1222 (10th Cir. 2002); *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir.1994).

*denied*, 527 U.S. 1030 (1999). Courts typically "have adopted a broad hands-off attitude toward problems of prison administration" that springs from the substantial hurdles facing prison administrators in carrying out their duties of "maintaining internal order and discipline, ... securing their institutions against unauthorized access or escape, and ... [of] rehabilitating." *Procunier v. Martinez*, 416 U.S. 396, 404-05 (1974).

"Likewise, the Fourth Amendment's prohibition of unreasonable search and seizure does not shield a prisoner's incoming mail from review." *Payne v. Werholtz*, No. 10–3177, 2010 WL 4103000 *1 (D. Kan. Oct. 18, 2010) (*citing United States v. Gordon*, 168 F.3d 1222, 1228 (10th Cir. 1999) (there is no reasonable expectation of privacy in prisoner's mail and monitoring "is essentially an administrative matter in which the courts will not intervene") (citation omitted)).

Plaintiff does not allege facts supporting a plausible mishandling of mail claim against any of the Defendants.

*First*, Plaintiff's well-pleaded facts do not support a denial of a constitutional right, much less a clearly established constitutional right, concerning a Nintendo DS he had mail ordered. Plaintiff alleges, on September 20, 2017, Defendant Rose informed him that LSH security officers wanted to search a package mailed to him and refused to provide a "shakedown" report, instead issuing a "denial or restriction of resident rights." UF ¶ 33.a. A copy of the restriction was filed with the original complaint, ECF 001-4, and is referenced in the Amended Complaint, ECF 016, ¶ 68. The restriction explains that the package was searched per policy to avoid

introduction of contraband. ECF 001-4. See also UF ¶37. Plaintiff does not allege that he was not provided with the package's contents, a Nintendo DS, after the search. Records show it was provided to him on September 21, 2017. UF ¶ 39. The records also establish that the LSH staff were acting by policy. UF ¶¶ 34-38.

*Second*, Plaintiff's well-pleaded facts do not support a denial of a constitutional right, much less a clearly established constitutional right, concerning an audio equalizer. He claims LSH Security Officer Kirts opened and searched a package containing an audio equalizer. He complains he consented to the search only to keep the equalizer from being returned to vendor who had mailed it to him and states the search happened when he was not present. UF ¶ 33.b. None of this is a constitutional violation even if entirely accurate. Moreover, Officer Kirts is not a party in this lawsuit.[16]

*Third*, Plaintiff includes allegations about the return of items ordered from unauthorized vendors. He claims that Defendant Newell returned packages containing a RangeMaster X-Treme. UF ¶ 33.c. His speculative conclusion that Newell was retaliating for a grievance he had filed is not supported by facts. He alleges nothing which disputes the explanation provided by Newell, by plaintiff's admission–Property Staff and Security could not ascertain what was in the package–was not accurate and supported by LSH policies against introduction of

---

[16] Kirts' version is expressed in an attachment to the *Martinez* report. See ECF 032 at 104.

contraband. Thus, at the very minimum, Plaintiff has not alleged a plausible denial of his constitutional rights by Newell.

Records provided in the *Martinez* report add unneeded meat, but also demonstrate the implausibility and invalidity of plaintiff's claims. Plaintiff secured permission to purchase the RangeMaster from Walmart.com. However, the package received was sent by Adam Dager/PayPal, an unapproved vendor. Through tomography, its contents were suspicious. Chubb did not have a property variance showing approval to receive the package from the unapproved vendor, the package was returned. This happened again with DAGCORP, LTD, as the unapproved vendor. Similar incidents occurred, involving Chubb receiving a package from an unapproved vendor with suspicious contents. UF ¶¶ 42-58. Chubb filed unsuccessful grievances. *Id.*

Moreover, Chubb has disputed the constitutionality of the restriction of packages from unapproved vendors in the past. *See Chubb v. Sullivan*, 50 Kan. App. 2d 419, 330 P.3d 423 (2014). And the Kansas courts have found the vendor restriction is rationally related to a legitimate government interest in preventing contraband. They have approved that the institutional requirement sexually violent predators buy or receive property from only approved vendors does not rise to level of constitutional significance. *E.g., id.* at 436.

*Last*, Plaintiff's allegations of denial of access to courts and attorneys also fall short of stating a plausible claim against any of the Defendants. *See* UF ¶ 33.d-f. Only Defendant Bennet is specifically called out in these allegations. *See* ECF ¶¶

74, 76, 77, 78, 79 & 83. He asserts that Bennett never responded to his request for indigent postage. *Id.* at ¶ 75. He also makes conclusory claims that "Bennett knowingly and intentionally interfered with [his] right to correspond with his attorney," ECF ¶ 76; "failed to process [his] legal mail and thereby interfered with his right to access the court," *id.* at ¶ 78[17]; and "Bennett knowingly and intentionally interfered with [his] right to send and receive mail from his attorney and interfered with [his] access the court," *id.* at 83. These statements are no more than speculation and bald assertions arising from alleged mishandling or non-delivery of outgoing mail by other unnamed staff, presuming the existence of the mail. The statements are not sufficient to support a plausible claim that Bennett acted intentionally or with deliberate indifference.

Moreover, Chubb has not alleged any injury that has hindered his efforts to pursue a legal claim. "[A] prisoner must demonstrate actual injury from interference with his access to the courts—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee v. Pacheco*, 627 F.3d 1178, 1191 (10th Cir. 2010); *Scott v. Hilde*, No. 10-CV-02135, 2011 WL 4486205, at *6 (D. Colo. Sept. 2, 2011), *report and recommendation adopted*, No. 10-CV-02135, 2011 WL 4485938 (D. Colo. Sept. 27, 2011). *See also Beauclair v. Roberts*, No. 14–3022, 2015 WL 197332 *7 (D. Kan. Jan. 14, 2015) (dismissing denial of access claim because

---

[17] He claims that Bennett stated: "policies are just guidelines and staff do not have to follow policy" without providing any context for the alleged statement, *i.e.*, whether it applied to indigent postage, purchase of sage or something else. ECF ¶¶ 74-76.

neither plaintiff's motion to recall mandate nor the appeal he claims was denied is shown to have amounted to a non-frivolous claim). *Cf. Clark v. Oakley*, 560 Fed.Appx. 804 (10th Cir. April 1, 2014) (*unpub.*) (finding lack of causation between the alleged hindrance to access and the alleged injury in the absence of possible success on the impacted claim). Plaintiff has not alleged any facts that reasonably imply his appeal to the Kansas Office of Administrative Hearings was nonfrivolous; particularly when he concedes that a motion to dismiss was pending. *Compare* ECF 016 ¶ 77 and ¶ 78. Likewise, no information is provided which establishes an appeal of a court's denial of an "annual review hearing" could have any merit. *See* ECF 016 ¶ 79.[18]

Likewise, if the *Martinez* report is considered, the absence of an actionable mishandling of mail claim is evident. Records show Chubb submitted ten requests for indigent postage, between May 28, 2018 and December 27, 2018, which were each granted. UF ¶ 59. While there is no record of Chubb's alleged request for postage on July 20, 2018 and August 3, 2018, the Patient Outgoing Mail Log for Chubb, during that timeframe, shows mail sent to Charles Pike on July 22, 2018 and August 5, 2018. UF ¶¶ 60-61. The log also shows mail was sent to the Kansas

[18] An annual mental condition review, with a report, is required under K.S.A. 59-29a08(a). The person committed under the Kansas sexually violent predator act may request a review hearing thereafter. *Id.* at subsection (b). If he or she fails to do so, the court that committed the person under the Kansas sexually violent predator act must conduct an in camera annual review of the status of the person's mental condition and determine whether the person's mental abnormality or personality disorder has significantly changed so that an annual review hearing is warranted. *Id.* at subsection (f).

Office of Administrative Hearings on November 23, 2018. UF ¶ 61. And there is no record of a return of a letter from Mr. Gerald Domitrovic, on or about October 23, 2018, despite plaintiff's allegations. *Compare* UF ¶ 62 & ECF 016 at ¶ 79.

B.   *Defendants have immunity against Plaintiff's unreasonable search and seizure claim.*

The controlling law recited by the Court in its September 27, 2018 Order to Show Cause, ECF 008 at 7-11, outlines: "[c]onditions of confinement cannot give rise to a due process violation unless those conditions constitute atypical and significant hardship on a resident in relation to the ordinary incidents of confined life"; "there is nothing in the KSVPA that provides SPTP residents with complete privacy or otherwise states that residents' rooms will not be searched [and] [a]ny privacy contemplated by the KSVPA would not outweigh the State's interest in maintaining a safe, secure facility"; and courts "are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest." *Id.* (citations and internal quotation marks omitted).

Extending those rules into the qualified immunity rubric, Plaintiff has not alleged facts, which if believed, establish a violation of his constitutional rights, much less a violation of clearly established constitutional rights by any of the Defendants. The uncontroverted facts, UF ¶¶ 64-75, confirm this.

*CONCLUSION*

It is, of course, true that a *pro se* litigant's pleadings must be construed liberally and are held to a less stringent standard than formal pleadings drafted by lawyers. *Polk v. Labette Cty. Jail*, No. 19-3208, 2019 WL 5395734, at *1 (D. Kan. Oct. 22, 2019) (*citing Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). Yet, it is not fair that the Court should be a forced to be the cat's paw for persons in custody who, like Plaintiff, regularly litigate.[19] Thus, Plaintiff is not relieved from following the same rules of procedure as any other litigant. *See Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). And the Court need not "assume the role of advocate for the *pro se* litigant." *Hall, supra*. Nor is the Court to "supply additional factual allegations to round out a plaintiff's complaint." *Whitney v. State of New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

With these thoughts in mind and for the reasons stated, liberally construing Plaintiff's pleadings and, if deemed necessary, affording his claims proper consideration under summary judgment standards, his claims should dismissed or summary judgment should be entered under the doctrine of qualified immunity.

---

[19] *See e.g., State v. Chubb*, 123 P.3d 212 (Kan. App. 2005); *Chubb v. Sedgwick Cty. Jail*, No. 09-3010, 2009 WL 634711 (D. Kan. Mar. 11, 2009); *Chubb v. State*, 203 P.3d 1281 (Kan. App. 2009); *In re Care & Treatment of Chubb*, 278 P.3d 1001 (Kan. App. 2012); Chubb v. State, 293 P.3d 168 (Kan. App. 2013); *Chubb v. Sullivan*, 50 Kan. App. 2d 419, 330 P.3d 423 (2014); *In re Care & Treatment of Chubb*, 317 P.3d 148 (Kan. App. 2014); *State v. Chubb*, 317 P.3d 149 (Kan. App. 2014); *Chubb v. Brownback*, No. 14-CV-03227, 2016 WL 5410615 (D. Kan. Sept. 28, 2016).

Respectfully submitted,

OFFICE OF ATTORNEY GENERAL
DEREK SCHMIDT

s/ Arthur S. Chalmers
Arthur S. Chalmers, KS S. Ct. #11088
Assistant Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612
Ph: (785) 368-6244
Fax: (785) 291-3767
Email:  art.chalmers@ag.ks.gov
*Attorney for Defendants*

## CERTIFICATE OF SERVICE

This is to certify that on this 13th day of November, 2019, I electronically filed

the above and foregoing with the Clerk of the Court using the Court's Electronic

Filing System and a copy was served on the same date by regular United States

mail, postage prepaid, to:

Michael R. Chubb
1301 KS Hwy. 264
Larned, KS 67550

s/ Arthur S. Chalmers
Arthur S. Chalmers