## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

MICHAEL R. CHUBB,

               **Plaintiff,**

      v.                               **CASE NO. 17-3220-SAC**

TIM KECK, et al.,

               **Defendants.**

## MEMORANDUM AND ORDER

This matter is before the Court on a motion to dismiss or for summary judgment filed by Defendants (ECF No. 33).  The motion has been fully briefed and is ripe for decision.  Defendants' motion is granted for the reasons stated herein.

### I.  Background

Plaintiff Michael R. Chubb is a person civilly committed under Kansas law to the custody of the Secretary of the Department of Social and Rehabilitative Services in the Sexual Predator Treatment Program (SPTP) and is detained at Larned State Hospital (LSH), Larned, Kansas. Plaintiff proceeds *pro se* and *in forma pauperis.*  Plaintiff names as defendants Tim Keck, Secretary of the Kansas Department of Aging and Disability Services; Bill Rein, Superintendent of LSH; Michael Dixon, Director of the Sexual Predator Treatment Program (SPTP); Haleigh Bennett, Program Manager; Tony Schwabauer, Chief of Security, LSH; Kevin Stegman, Special Investigator; Gerry Dirks, Special Investigator; Jeff Brown, LSH Chaplain; Heather Keller, SPTP

Property Officer; Marshall Newell, SPTP Property Officer; and Christina Rose, SPTP Property Officer.

Plaintiff's amended complaint (ECF No. 16) contains four claims or counts: (1) violation of his right to free exercise of his religion under the First Amendment; (2) unreasonable search and seizure of his room and property; (3) interference with his mail; and (4) seizure and damage to his property.

The Court ordered a *Martinez* report, which was filed on September 16, 2019.  Defendants then filed their motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6) or for summary judgment.  Plaintiff did not file a response to the *Martinez* report, but he did file a response to Defendants' motion on May 14, 2020 (ECF No. 41), after requesting and receiving several extensions of time.

## II.  Standard of Review

The Court must construe *pro se* filings liberally.  *See Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)).  The Court does not, however, "take on the responsibility of serving as the litigant's attorney in constructing arguments and searching the record."  *Id.*  Moreover, "pro se parties [must] follow the same rules of procedure that govern other litigants."  *Id.*

### A.  Rule 12(b)(6)

A court may dismiss a complaint for failure to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In order to withstand a motion to dismiss for failure to state a claim, a complaint must contain enough allegations of fact to state a claim to relief that is plausible on its face.  *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 1974 (2007)).  All well-pleaded facts and the reasonable

inferences derived from those facts are viewed in the light most favorable to plaintiff. *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008).   Conclusory allegations, however, have no bearing upon the court's consideration. *Shero v. City of Grove, Okla.*, 510 F.3d 1196, 1200 (10th Cir. 2007).

### B.  Summary Judgment

Because the Court has considered the *Martinez* report filed in this case in evaluating Plaintiff's claims, it decides the motion under the request for summary judgment contained therein. *See Casanova v. Ulibarri*, 595 F.3d 1120, 1125 (10th Cir. 2010) (district court's dismissal under Rule 12(b)(6) of a prisoner's complaint filed pro se characterized as "irregular" where court had not limited its review to the complaint).

Summary judgment is appropriate if the pleadings and other materials before the Court show no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Liberty Lobby*, 477 U.S. at 248.

On summary judgment, the initial burden is with the movant to point out the portions of the record which show the movant is entitled to judgment as a matter of law. *Thomas v. Wichita Coca-Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir. 1992), cert. denied, 506 U.S. 1013 (1992). Instead of disproving a claim or defense, the movant need only show "a lack of evidence" on an essential element. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998).  If the movant meets that burden, the non-movant must come forward with specific facts based on admissible evidence from which a rational fact finder could find in the non-movant's favor. *Id.* The non-movant's "burden to respond arises only if" the movant meets its initial burden of

production.  *Neal v. Lewis*, 414 F.3d 1244, 1248 (10th Cir. 2005).  The essential inquiry is "whether the evidence presents a sufficient disagreement to require submission to the jury or whether the evidence is so one-sided that one party must prevail as a matter of law."  *Liberty Lobby*, 477 U.S. at 251-52.

The Court views all evidence and draws all reasonable inferences in the light most favorable to the party opposing summary judgment.  *Pinkerton v. Colorado Dept. of Transp.*, 563 F.3d 1052, 1058 (10th Cir. 2009).  However, Plaintiff's *pro se* status does not exempt him from complying with the essential federal rules of civil procedure, including Rule 56, *Birbari v. United States*, 2012 WL 2087180 at *3 (10th Cir. Jun. 11, 2012), or a court's local rules, *Calia v. Werholtz*, 426 F. Supp. 2d 1210, 1214 (D. Kan. 2006).  Plaintiff's response to Defendants' motion (ECF No. 41) is submitted in the form of an affidavit.  He states that "[t]his Affidavit is a compilation of all complaints, grievances, and facts that support the allegations in my complaint."  ECF No. 41, at 3. In addition to attempting to raise new claims, Plaintiff utterly fails to include a "section containing a statement of material facts as to which the party contends a genuine issue exists."  D. Kan. Rule 56.1(b)(1).  In fact, he does not specifically state that he disputes any fact contained in Defendants' memorandum in support.  Rule 56 requires that each disputed fact be numbered and refer with particularity to the part of the record relied on.  It also provides that "[a]ll material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party."  D. Kan. R. 56.1(a). Because Plaintiff has failed to specifically controvert any of the 20 pages of facts properly set forth by Defendants, all of Defendants' facts shall be admitted for purposes of this motion.

### III.  Analysis

#### A.  Plaintiff's Status

Initially, the Court notes that Plaintiff cites cases in his pleadings discussing the rights of persons who have been involuntarily committed.  *See, e.g., Youngberg v. Romero*, 457 U.S. 307, 321-22 (1982).  Plaintiff, as a civil committee under the Kansas Sexually Violent Predators Act (KSVPA), is in a different position than a prisoner or a person who is civilly committed, albeit involuntarily, merely for mental health issues.  He has been found to be a sexually violent predator (SVP) from whom society needs to be protected.  While SVPs "must be afforded more considerate treatment and conditions of confinement than criminals whose conditions of confinement are designed to punish", "SVPs have been civilly committed subsequent to criminal convictions and have been adjudged to pose a danger to the health and safety of others."  *Hydrick v. Hunter*, 500 F.3d 978, 989-90 (9th Cir. 2007) (quotation omitted).   As a result, "the rights of SVPs may not necessarily be coextensive with those of all other civilly detained persons."  *Id.*

#### B.  Qualified Immunity

Defendants have asserted the qualified immunity defense to all of Plaintiff's claims.  Qualified immunity protects public officials who are required to exercise their discretion, shielding them from personal liability for civil damages.  *Apodaca v. Raemisch*, 864 F.3d 1071, 1075-76 (10th Cir. 2017) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982)).  When a defendant asserts a qualified immunity defense, the plaintiff has a "heavy two-part burden" of establishing "(1) that the defendant's action violated a federal constitutional or statutory right; and (2) that the right violated was clearly established at the time of the defendant's actions."  *Grissom v. Roberts*, 902 F.3d 1162, 1167 (10th Cir. 2018) (internal quotation marks omitted).  Failure to satisfy either prong

of this test will result in a grant of qualified immunity to the defendant. *Id.* In other words, if the right is not clearly established, a court may find qualified immunity without deciding the constitutionality of the conduct. *Apodaca,* 864 F.3d at 1076 (citing *Pearson v. Callahan*, 555 U.S. 223, 236–42 (2009)).

Whether a right is "clearly established" is an objective test: "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brown v. Montoya*, 662 F.3d 1152, 1164 (10th Cir. 2011) (quoting *Stearns v. Clarkson,* 615 F.3d 1278, 1282 (10th Cir. 2010)). "In order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Id.*

### C.  First Amendment Free Exercise Claim

In this count, Plaintiff states he was a member of a Native American religious callout group called Gray Wolf.  He claims he was kicked out of Gray Wolf in April, 2018, due to "fear mongering" by an unnamed staff member.  Plaintiff alleges Defendant Bennett was angry he was allowed to practice his religion individually after he was kicked out of Gray Wolf, and she "began a campaign of harassment directed toward Plaintiff through open displays of anger, intimidation when he went out for worship, ignoring requests for religious purchases, and making comments to him that she was going to shut him down."  ECF No. 16, at 9.  Plaintiff claims he made "multiple" requests to purchase religious supplies, but Defendants Brown and Bennett ignored his requests. He further claims Defendant Newell rejected a shipment of sage ordered by Plaintiff because it came from an unapproved vendor, but Defendant Bennett "refuses to approve any religious vendor for resident purposes." *Id*.  He claims the leaders of Gray Wolf asked him rejoin in August, 2018,

and told him he did not have a choice.  They also told him Defendants Bennett and another staff member intended to send Plaintiff to the "punishment unit" if he did not rejoin Gray Wolf.  Plaintiff alleges Defendant Brown refused to return three smudge bowls to him and makes the broad allegations that Brown failed to respond to religious requests in a timely manner, failed to respond to requests for religious ceremonies, and interfered with Plaintiff's right to possess religious items. *Id.* at 10-11.

The uncontroverted facts provided by Defendants differ somewhat from Plaintiff's allegations.  The Gray Wolf callout expelled Plaintiff in April of 2018 because SPTP staff found tobacco in his medicine pouch.  This was a violation of LSH Policy 9-06.  The leaders of Gray Wolf expelled Plaintiff because they were concerned his policy violation could lead to the shutting down of the callout.  Defendant Brown met with the leaders and explained there was no consideration given to shutting down the Gray Wolf callout.  In August of 2018, Defendant Brown was notified by SPTP staff that Plaintiff was rejoining the Gray Wolf callout.  He made no threats or promises to coerce Plaintiff's readmittance to the callout.

On April 26, 2018, while Plaintiff was engaging in individual worship, he submitted to Defendant Brown a request to purchase sage and tobacco for religious purposes.  Defendant Brown responded on May 3, 2018, explaining Plaintiff needed to submit a property variance form before purchasing religious-based items.  On May 20, 2018, Plaintiff submitted another request form notifying Defendant Brown that he was purchasing a smudge bowl, a lighter, and a bottle of butane. When the items arrived, staff confiscated the lighter and the butane because they had not been approved by Defendant Brown as required by SPTP policy.

On July 22, 2018, Plaintiff again requested approval to purchase sage and tobacco from two unapproved vendors.  Defendant Brown asked about Plaintiff's need for additional tobacco

because there was some available for his use and again explained that Plaintiff needed to submit a property variance form before ordering the sage. Plaintiff received a package from one of the unapproved vendors on August 2, 2018. Because Plaintiff had not received prior approval to purchase from that vendor, the contents were confiscated. When Plaintiff complained the tobacco he purchased was being withheld, Defendant Brown explained the tobacco would be kept by staff and provided to Plaintiff for his religious use. This is in compliance with LSH Policy No. 9-06.

In order to state a constitutional denial of free exercise of religion claim, Plaintiff must allege the defendants "substantially burdened his sincerely-held religious beliefs." *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009). A "substantial burden" involves something more than an incidental effect or inconvenience on religious exercise. *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1312-15 (10th Cir. 2010). The Tenth Circuit has identified "three broad ways government action may impose a substantial burden on religious exercise:"

> requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010) (citing *Abdulhaseeb*, 600 F.3d at 1316). "[N]ot 'every infringement on a religious exercise will constitute a substantial burden.'" *Id.* "[A]t a minimum the substantial burden test requires . . . more than an inconvenience to one's religious practice." *Id.* at 882 (quoting *Abdulhaseeb*, 600 F. 3d at 1316). Mere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden.

In addition, a plaintiff "must assert conscious or intentional interference with his free exercise rights to state a valid claim." *Gallagher*, 587 F.3d at 1070. A defendant must have acted with discriminatory purpose. *Carr v. Zwally*, 760 F. App'x 550, 554 (10th Cir. 2019) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). To state a plausible claim of interference with free exercise rights, a plaintiff "must plead sufficient factual matter to show that" the defendant acted "not for a neutral . . . reason but for the purpose of discriminating on account of . . . religion." *Id.* (citations omitted).

"If the prisoner satisfies this initial step, defendants 'may identify the legitimate penological interests that justified the impinging conduct,' and '[t]he burden then returns to the prisoner to show that these articulated concerns were irrational.'" *McKinley v. Maddox*, 493 F. App'x 928, 932 (10th Cir. 2012) (citation omitted). The court then balances factors set forth by the Supreme Court in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987), "to determine the reasonableness" of the conduct. *Id.*

Plaintiff's claims fail in three regards. First and most importantly, Plaintiff fails to demonstrate that his rights were substantially burdened. He does not allege that he was required to participate in "an activity prohibited by a sincerely held religious belief." *Strope*, 381 F. App'x at 881. He does not allege he was prevented from participating in "conduct motivated by a sincerely held religious belief." *Id.* He does not allege he was placed under substantial pressure "either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief." *Id.* As Defendants point out, Plaintiff was never prevented from practicing his religion and does not allege that he was. Plaintiff places significant weight on the failure of Defendant Bennett to authorize a vendor for religious items to be added to the approved vendor list. *See* ECF No. 16, at 9, 10, 11. However, there was a

procedure in place for residents to request a variance allowing them to order items from unapproved vendors. While the procedure took some time, it is an inconvenience rather than a substantial burden. *Strope*, 381 F. App'x at 882.

Second, Plaintiff fails to demonstrate that Defendant Bennett, Brown, or Newell acted with the purpose of discriminating against him *on account of his religion*. While Plaintiff's allegations about Defendant Bennett's actions and statements may indicate personal animus against Plaintiff, they simply do not plausibly show that she acted with the purpose of discriminating against him on the basis of his religion. *See Carr*, 760 F. App'x at 558 (finding complaint alleged at most "personal animus" rather than actions with the purpose of restricting religion). As for Defendants Brown and Newell, their actions were supported by facility policy, were not attempts to restrict his ability to practice his religion, or were merely negligent.

Third, Defendants have identified legitimate interests that justify the restrictions on SPTP residents purchasing or possessing certain items. They point out that limiting the purchase and burning of tobacco and sage, access to and use of lighters and butane, and products, such as leather, that require the use of tools that are potentially dangerous to work has been found to be reasonable by other courts. *See Murray v. Edwards Cty. Sheriff's Dep't*, 453 F. Supp. 2d 1280, 1291-92 (D. Kan. 2006) (candles); *Kindred v. Allenby*, No. 114CV01652, 2019 WL 4013463, at *3 (E.D. Cal. Aug. 26, 2019) (leather, herbs including sage, needles); *Dove v. Patuxent Facility*, No. CV DKC-18-1847, 2019 WL 2373425, at *7 (D. Md. June 5, 2019) (requiring plaintiff to follow facility policies for obtaining approval for purchase of religious items was not a substantial burden); *Luther v. White*, No. 5:17-CV-138-TBR, 2019 WL 2214009, at *4 (W.D. Ky. May 22, 2019) (approving limitation on purchase and burning of incense); *Martinez v. Richardson*, No. 6:15CV732, 2017 WL 9289644, at *17 (E.D. Tex. Jan. 19, 2017), *report and recommendation*

*adopted*, No. 6:15CV732, 2017 WL 525768 (E.D. Tex. Feb. 8, 2017) (approving restriction on candles).  In addition, limiting the number of approved vendors for religious or other purchases by SPTP residents has been found to be reasonable by the Kansas Court of Appeals in a habeas action brought by Plaintiff.  *See Chubb v. Sullivan*, 330 P.3d 423, 439 (Kan. App. 2014) (finding policy of SPTP limiting number of approved vendors does not implicate any constitutional right, and citing the following cases: *Torres v. Cate,* No. C 12–6236 LHK (PR), 2013 WL 1097997, at *2 (N.D. Cal. 2013) (unpublished opinion) ("The Due Process Clause protects persons against deprivations of life, liberty, and property without due process of law. It does not guarantee prisoners a right to purchase property from outside vendors, or to purchase property at all."); *Ciempa v. Jones,* 745 F. Supp. 2d 1171, 1199 (N.D. Okla. 2010) ("Incarceration necessarily carries with it restrictions on a prisoner's ability to purchase items of his or her choosing."); *Davis v. Powers,* No. C08–5751, 2010 WL 2163134, at *9 (W.D. Wash. 2010) (unpublished opinion) (institutional requirement of sexually violent predators to buy or receive property from only approved vendors does not rise to level of constitutional significance); *Stringham v. Hubbard,* No. CIV S–05–0898 GEB DAD P., 2006 WL 3053079, at *4 (E.D. Cal. 2006) (unpublished opinion) ("Although protected property interests may arise from state law, plaintiff has cited no California law that gives him a protected interest in making purchases from multitudes of vendors.")). Plaintiff has not met his burden to show these concerns were irrational.  *See McKinley*, 493 F. App'x at 932.

Because the Court finds no violation of Plaintiff's constitutional right to free exercise of his religion, the analysis ends.  Defendants are entitled to summary judgment on Plaintiff's "freedom of religion" claim.

### D.  Unreasonable Search and Seizure Claim

Plaintiff's amended complaint contains the following allegations under this claim:

1)  May 1, 2017 – Defendant Schwabauer searched Plaintiff's room without consent or a search warrant.  He seized audio and USB cables owned by Plaintiff.  Defendants state that the cords were deemed media contraband per SPTP Policy No. 5.18.

2)  June 20, 2017 – Defendant Keller seized all of Plaintiff's property.  She told Plaintiff she was instructed by Defendant Bennett to send all of his electronics to Defendant Dirks.  Defendants state that Plaintiff was being moved to a new room, and his property was packed up as part of that process.  His electronics were sent to Defendant Dirks for inspection.  Dirks found that a Koramzi RF modulator box had been modified to contain a second, hidden USB port on the inside.  The hidden port contained a thumbdrive.  These items were sent to the Internet Crimes Against Children Task Force for forensic analysis.  No prohibited material was found on the drive, but the altered modulator box and thumbdrive were contraband under SPTP Policies 10.0 and 5.18.

3)  July 7, 2017 – Plaintiff alleges he was interrogated by Defendants Dirks and Schwabauer, without being Mirandized, and was told the June 20 search and seizure was directed by Defendant Bennett.

4)  June 19, 2018 – Plaintiff was charged in state court with one count of violating K.S.A. 21-5914(a)(1), Traffic in Contraband, based on the June 20, 2017, search and seizure and the July 7, 2017, interrogation.  (Case No. 2018-CR-000071, Pawnee County District Court; dismissed November 6, 2018.)  The charges were dismissed.

In addition, Plaintiff mentions more generally several seizures of property that are not related to a criminal investigation.  He also alleges Defendant Stegman has "seized and held numerous articles of property that belong to Plaintiff without a warrant."  (ECF No. 16 at 17).

Under the qualified immunity rubric, Plaintiff must show Defendants violated a constitutional right and that the right was clearly established to overcome a claim of qualified immunity.  Plaintiff asserts the searches of his room and mail violated the Fourth and Fourteenth Amendments.

The Court outlined the applicable Fourth Amendment law in its order to show cause and duplicates that here.  The Fourth Amendment protects against unreasonable searches and seizures. *United States v. Johnson*, 584 F.3d 995, 999 (10th Cir. 2009).  But the Fourth Amendment is not implicated when the person challenging the search had no reasonable or legitimate expectation of privacy in the place that was searched.  *Reeves v. Churchich,* 484 F.3d 1244, 1254 (10th Cir. 2007). To establish a legitimate expectation of privacy, a person invoking the Fourth Amendment must demonstrate a subjective expectation of privacy in the area searched and that the expectation was objectively reasonable.  *Johnson*, 584 F.3d at 999.   While it is axiomatic that people have a reasonable expectation of privacy in their own homes (*see United States v. Maestras*, 639 F.3d 1032, 1035 (10th Cir. 2011)), courts have not found that residents in sexual predator treatment programs generally have a reasonable expectation of privacy in their rooms.  *See State v. Case*, 317 F.3d 149 (Table), 2014 WL 349605, *8 (Kan. App. 2014).

Consequently, Plaintiff must establish that he had a subjective expectation of privacy in his room at LSH and his mail.  He has not done so.  However, even if he had, the second part of the test asks whether his subjective expectation of privacy is one that society is prepared to recognize as reasonable.  *United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012).  The Court finds that even

if Plaintiff established a subjective expectation of privacy in his room and mail, that expectation was not objectively reasonable.  Plaintiff's room is in a secure government facility to which he has been involuntarily committed.  K.S.A. 59-29a22(b)(18) provides SPTP residents may "possess personal property in a reasonable amount, as long as the property complies with state laws and facility rules and policies. ... In no event shall a person be allowed to possess or store contraband." The same statute states, "A person's mail is subject to physical examination and inspection for contraband."  K.S.A. 59-29a22(b)(15).  Moreover, "[i]n the case of unprivileged incoming and outgoing prison mail, regulation by prison officials is essentially an administrative matter in which the courts will not intervene." *United States v. Gordon,* 168 F.3d 1222, 1228 (10th Cir. 1999) (internal quotation marks and citation omitted).  "There is nothing in the KSVPA that provides SPTP residents with complete privacy or otherwise states that residents' rooms will not be searched. Any privacy contemplated by the KSVPA would not outweigh the State's interest in maintaining a safe, secure facility."  *State v. Orton*, 400 P.3d 677 (Kan. App. 2017).

As for the Fourteenth Amendment, courts in this district have applied the rule in SVP cases that a restrictive condition may be imposed without being considered punishment and violating the Fourteenth Amendment if "it bear(s) some reasonable relation to the purpose for which persons are committed."  *Burch v. Jordan*, No. 07-3236, 2010 WL 5391569, at *14 (D. Kan. Dec. 22, 2010), aff'd sub nom. *Burch v. Don Jordan*, 444 F. App'x 236 (10th Cir. 2011); quoting *Seling v. Young*, 531 U.S. 250, 265 (2001); see also *Merryfield v. Jordan*, No. 07-3289, Doc. 8 (D. Kan. Feb. 26, 2008).  Conditions of confinement cannot give rise to a due process violation unless those conditions constitute atypical and significant hardship on a resident in relation to the ordinary incidents of confined life.  *Id*.; *Sandin v. Conner*, 515 U.S. 472, 484 (1995).  While restrictions may not be arbitrary or purposeless, SVPs, like other civil detainees and prisoners, are undoubtedly

subject to security measures typically used at correctional facilities.  *Seling*, 531 U.S. at 540.   A secure facility has a legitimate interest in "maintaining institutional security and preserving internal order and discipline," which "may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees", as well as SVPs.  *Bell v. Wolfish*, 441 U.S. 520, 546 (1979).  Consequently, "[l]oss of freedom of choice and privacy are inherent incidents of confinement in such a facility."  *Bell*, 441 U.S. at 537.

Under the standard of *Seling*, Plaintiff must show the conditions he challenges are excessive in relation to the purposes served by his commitment under the KSVPA.  The two main purposes of the KSVPA, as recognized by the U.S. Supreme Court, are to incapacitate sexually dangerous predators and to provide treatment.  *Kansas v. Hendricks*, 521 U.S. 346, 366 (1997).  The searches Plaintiff challenges of his room and packages he received in the mail plainly involve typical security measures, which further legitimate government goals.  Plaintiff alleges no facts suggesting to the Court that the searches he complains of were excessive in relation to the purposes of his confinement.  Nor has Plaintiff demonstrated that the searches were atypical or created a significant hardship in relation to the ordinary incidents of life in the SPTP such that due process was violated.

Plaintiff also complains the defendants violated Kansas regulations and policies of LSH. Denying an individual certain process, however mandatory under state law, does not itself deny liberty. *Templeman v. Gunter*, 16 F.3d 367, 371 (10th Cir. 1994).  The regulatory provisions upon which Plaintiff relies in this action are neither due nor required under the United States Constitution.  *See Lloyd v. Suttle,* 859 F. Supp. 1408, 1410 (D. Kan. 1994).  Thus, to the extent Plaintiff complains that state or facility administrative requirements were not followed when his room and mail were searched, no constitutional due process claim is implicated.  *Id.*

Defendants are entitled to summary judgment on Plaintiff's unreasonable search and seizure claim.

### E.  Interference with Mail Claim

Plaintiff lists a number of instances where Defendants allegedly interfered with his mail, and Defendants address each of those instances in their Memorandum or the *Martinez* report.  The instances are as follows:

1) Plaintiff received a Nintendo DS in the mail from an approved vendor on September 20, 2017.  Defendant Rose informed Plaintiff that LSH security officers wanted to search the package.  Plaintiff requested a "shakedown" report, which was given to him on the same date.  Defendant Rose said his request was a refusal and issued Plaintiff a rights restriction for restriction of his mail.  The restriction explains the package was searched per policy to avoid the introduction of contraband.  Plaintiff was given the contents of the package the next day.

2) On November 28, 2017, LSH Security Officer Kirts opened and searched a package containing an audio equalizer Plaintiff had ordered from an authorized vendor.  Plaintiff consented to this after being told the equalizer would not be allowed into the building if he did not consent.  The opening was performed outside Plaintiff's presence.  Officer Kirts is not named as a defendant.

3) Plaintiff states he received approval to order a RangeMaster X-Treme (a long-range FM transmitter).  When it arrived, Defendant Newell issued a rights restriction and returned the package without notice to Plaintiff.  Plaintiff alleges Defendant Newell took this action in retaliation for Plaintiff filing a grievance against LSH Security for opening his mail outside his presence.   According to Plaintiff, these events were duplicated two more times.

Defendants provide records showing that Plaintiff had permission to purchase the RangeMaster from Walmart.com, but the package was sent by Adam Dager/PayPal. This was an unapproved vendor. The package was searched with tomography, and the contents were found to be suspicious. Plaintiff did not have a variance giving him approval to receive a package from an unapproved vendor, so it was returned to the sender. This happened with packages Plaintiff received from other unapproved vendors.

4) On July 20, 2018 and August 3, 2018, Plaintiff claims he gave letters to his court-appointed attorney to unit staff, requesting postage be applied in accordance with the indigent postage policy. According to Plaintiff, Defendant Bennett never responded to Plaintiff's indigent request and the attorney never received Plaintiff's letters. However, facility records show that Plaintiff submitted multiple requests for indigent postage which were all granted and that mail was sent to Plaintiff's attorney on July 22 and August 5.

5) Plaintiff asserts Defendant Bennett failed to process Plaintiff's response to a motion to dismiss in a case pending before the Kansas Office of Administrative Hearings, which resulted in Plaintiff's case being dismissed. Plaintiff states he gave the response to Defendant Bennett on November 23, 2018. Rather than supporting Plaintiff's contention, the outgoing mail log maintained by the SPTP shows mail was sent to the Office of Administrative Hearings on November 23, 2018.

6) Plaintiff's court-appointed attorney handling his annual civil commitment review attempted on October 23, 2018, to send him the district court's decision denying him a hearing. The letter was returned to the attorney with "REFUSED" written on the front. The attorney remailed it, enclosing the original sealed envelope in a second envelope, and Plaintiff received the notice, but by then it was too late for Plaintiff to appeal the district

court's decision. Facility records do not show that a letter from Plaintiff's attorney was refused and returned on or about October 23, 2018.

On a claim that officials violated a plaintiff's First Amendment rights by mishandling mail, the plaintiff has the burden to prove that: (i) his mail was mishandled; (ii) that the particular named defendant was responsible for that mishandling; (iii) that the mishandling was purposeful; and (iv) there is a plausible inference to be drawn that the basis for that mishandling was not reasonably related to a legitimate penological interest. *Vreeland v. Griggs*, 2015 WL 13236349, at *4 (D. Colo. Aug. 28, 2015), citing *Gee v. Pacheco*, 627 F.3d 1178, 1187–88 (10th Cir. 2010).

Plaintiff's allegations that Defendants mishandled his mail fail to state a constitutional claim. First, Plaintiff has not shown in any of the instances that his mail was mishandled or not delivered. The first two instances described above are more properly classified as search claims. As explained above, it does not violate the Fourth or Fourteenth Amendment for facility staff to search Plaintiff's mail for contraband. Plaintiff seems to believe he has a constitutional right to be present when his non-legal mail is searched. That is not the case.

The third instance also does not allege mishandling of Plaintiff's mail. Upon its arrival at LSH, the mail was determined to come from unapproved vendors, and therefore it was returned per SPTP policy. As discussed above, the limitation of vendors to those previously approved by the facility is reasonable and does not violate the Constitution.

In the last three instances, Plaintiff claims Defendant Bennett violated his First Amendment right to access the courts. This right "is violated where government officials obstruct legitimate efforts to seek judicial redress." *City of New York v. Beretta U.S.A. Corp.,* 524 F.3d 384, 397 (2d Cir. 2008) (citing *Whalen v. Cnty. of Fulton,* 126 F.3d 400, 406–07 (2d Cir.1997) (internal citations omitted)). To assign liability to a defendant for violation of the right to access the courts, that

defendant must have acted intentionally. *Simkins v. Bruce,* 406 F.3d 1239, 1242 (10th Cir. 2005) (negligent mishandling of mail does not give rise to constitutional liability; there must be intentional conduct interfering with legal mail); *Treff v. Galetka*, 74 F.3d 191, 195 (10th Cir. 1996) (defendant must have acted intentionally or with deliberate indifference to be liable for mishandling mail). The plaintiff has the burden of coming forth with reliable evidence of intent. *Treff*, 74 F.3d at 195 (plaintiff has burden of proving intent or deliberate indifference of defendant).

Plaintiff has not met his burden. He alleges in two instances that he gave mail "to unit staff," not to Defendant Bennett. (ECF No. 16, at 20, 21). "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." *Foote v. Spiegel,* 118 F.3d 1416, 1423 (10th Cir. 1997). In the instance involving mail from his attorney for his annual civil commitment review hearing, his only "proof" of mishandling is that "REFUSED" was written on the front of the letter, and he does not even allege Defendant Bennett's involvement. (ECF No. 16, at 21-22). While Plaintiff asserts at one point that "Defendant Bennett knowingly and intentionally interfered with the Plaintiff's right to correspond with his attorney" (ECF No. 16, at 21), that is no more than a conclusory statement and is not reliable evidence.

An additional requirement for an access to the courts claim is that the plaintiff "must demonstrate actual injury from interference with his access to the courts—that is, that the prisoner was frustrated or impeded in his efforts to pursue a nonfrivolous legal claim concerning his conviction or his conditions of confinement." *Gee v. Pacheco,* 627 F.3d 1178, 1191 (10th Cir. 2010). The underlying claim must be at least "arguable" and nonfrivolous. *Id*. at 1244. "[T]he underlying cause of action that allegedly was lost is an element of an . . . access to the courts claim that must 'be described well enough to apply the 'nonfrivolous' test and to show that the 'arguable' nature of the underlying claim is more than hope.'" *Smith v. Bent Cty. Corr. Facility*, No. 19-CV-

02340-GPG, 2019 WL 8886195, at *2 (D. Colo. Aug. 19, 2019) (quoting *Christopher v. Harbury*, 536 U.S. 403, 415-16 (2002)).

Plaintiff claims two "actual injuries."  First, he states he had appealed an agency decision to the Kansas Office of Administrative Hearings.  The agency had filed a motion to dismiss, and Plaintiff gave his response to "unit staff" five days before the deadline, but the OAH did not receive the response and dismissed the appeal.  Initially, Defendant has shown that mail was sent to the Office of Administrative Hearings on November 23, 2018.  Moreover, Plaintiff does not describe the appeal, the motion to dismiss, or his response any further, making it impossible for the Court to assess whether the action was nonfrivolous.  Furthermore, "the injury requirement is not satisfied by just any type of frustrated legal claim." *Lewis v. Casey*, 518 U.S. 343, 354.  Generally, the claim must be a direct appeal of a conviction, a habeas petition, or a civil rights action to vindicate basic constitutional rights.  *Id*.  Based on the information provided by Plaintiff, it seems clear this action was none of those.

The second alleged actual injury was that Plaintiff did not receive a copy of the State court's denial of an annual civil commitment review hearing in time to appeal the decision because the letter from his attorney containing the court's decision was "refused" the first time it was sent. Again, Plaintiff does not provide any further information or evidence making it impossible to conduct the frivolity test.

Plaintiff has not established his constitutional rights were violated.  Therefore, Defendants are entitled to summary judgment of Plaintiff's interference with mail claim.

### F.  Property Claim

Plaintiff complains that some of his property was seized during the searches and was not returned, was kept for a period of over a month before being returned, or was damaged in the

search process.  The Tenth Circuit has ruled that property interest claims by prisoners are "to be reviewed under *Sandin*'s atypical-and-significant-deprivation analysis. . . [t]he Supreme Court mandate since *Sandin* is that henceforth we are to review property and liberty interest claims arising from prison conditions by asking whether the prison condition complained of presents 'the type of atypical, significant deprivation in which a State might conceivably create a liberty [or property] interest.'"  *Steffey v. Orman,* 461 F.3d 1218, 1222 (10th Cir. 2006) (quoting *Cosco v. Uphoff,* 195 F.3d 1221, 1224 (10th Cir. 1999)); *Clark v. Wilson,* 625 F.3d 686, 691 (10th Cir. 2010).  By extension, the Court finds *Sandin* should apply to property interest claims by SVPs.

Plaintiff has not alleged facts showing that the property deprivations of which he complains were an "atypical and significant hardship" that subjected him to conditions significantly different from those ordinarily experienced by residents in the SPTP.

Furthermore, even if Plaintiff could establish that he had a protectible interest in his missing or damaged property, his claim that these losses were without due process is conclusory and contradicted by his own allegations and exhibits.  Plaintiff had post-deprivation remedies which he utilized in the form of the grievance and property claim process.  Neither the negligent nor the unauthorized, intentional deprivation of property by a state employee gives rise to a due process violation if state law provides an adequate post-deprivation remedy.  *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) (intentional taking of property does not implicate due process clause where an adequate state post-deprivation remedy is available); *Parratt v. Taylor*, 451 U.S. 527, 543-44 (1981) (inmate could not present claim against warden under § 1983 for negligent loss of inmate's property where existence of state tort claims process provided due process).  The Court concludes that Plaintiff has failed to state a claim for relief with regard to his property claims.

## IV.  Conclusion

The pleadings and other materials before the Court show no genuine issue as to any material fact and that Defendants are entitled to judgment as a matter of law.  Therefore, Defendants' motion is granted, and the case is dismissed.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment (ECF No. 33) is **granted**.

**IT IS FURTHER ORDERED** that Plaintiff's motion for extension of time (ECF Doc. 40) to file his Response to Defendants' Motion is **granted** but is effectively moot as Plaintiff subsequently filed his Response and it was considered by the Court.


**IT IS SO ORDERED.**

DATED:  This 23rd day of September, 2020, at Topeka, Kansas.


**s/  Sam A. Crow**
**SAM A. CROW**
**U.S. Senior District Judge**